■ Constance Van Dyke, Appellant, v Darryl W. Van Dyke, Respondent. [709 NYS2d 672] —Graffeo, J. Appeal from a

judgment of the Supreme Court (Hughes, J.) granting defendant a divorce and ordering equitable distribution of the parties' marital property, entered April 1, 1999 in Schoharie County, upon a decision of the court.

The parties were married on December 5, 1987 and there are no children of this union. Prior to this marriage, which was the second for both parties, plaintiff was employed as a licensed practical nurse and defendant worked as a manager at Van Dyke Motors, his parents' automobile dealership. After suffering a back injury before her marriage to defendant, plaintiff obtained a real estate license and earned up to $30,000 per year. When the real estate market suffered a setback, she took a sales position at Van Dyke Motors, earning up to $27,000 per year during the course of the marriage.

In his position as parts manager at Van Dyke Motors, defendant's income was approximately $20,000 per year. After a brief stint as a self-employed cabinetmaker, defendant became general manager of the dealership when his father died in 1990, which increased his income to $27,000 per year. Thereafter, defendant and his two siblings each inherited a one-third interest in Van Dyke Enterprises, a corporation valued at $541,000 which owned vacant land and leased premises to Van Dyke Motors, a Grand Union grocery store and a Niagara Mohawk Service Center. In December 1994, Van Dyke Enterprises entered into an agreement to purchase the shares inherited by defendant's siblings at a cost of $400,000, to be paid from corporate rental income in monthly installments over a 10-year period. Just prior to the parties' first separation in 1995, defendant's mother transferred her interest in the dealership to defendant and, as dealer principal, defendant's annual salary rose to between $37,000 and $44,000.

Plaintiff temporarily vacated the marital residence in early 1995 and, subsequent to a brief reconciliation, she departed permanently in July 1996, removing a substantial proportion of the household furnishings. Plaintiff then sued for divorce on the ground of cruel and inhuman treatment. After extensive pretrial discovery and other proceedings, some of which were conducted by plaintiff *pro se* after she had discharged a prior attorney,* the matter was scheduled for trial. Having retained her present attorneys, plaintiff withdrew her complaint and

---

* By decision and order entered September 30, 1997, plaintiff's previous attorneys were discharged and granted a judgment against plaintiff in the amount of $18,000 for unpaid counsel fees. On appeal, plaintiff challenges the amount of the judgment, asserting that Supreme Court improperly failed to hold a hearing or submit the matter to arbitration. Because

defendant amended his answer to add a counterclaim for divorce based on cruel and inhuman treatment. After a trial on defendant's counterclaim, Supreme Court granted defendant a judgment for divorce and directed equitable distribution of the marital assets. Plaintiff now appeals.

Plaintiff initially seeks reversal of the judgment for divorce, asserting that defendant failed to establish sufficient evidence in support of his June 1998 counterclaim for divorce. We disagree. Supreme Court, *inter alia*, credited defendant's testimony concerning specific incidents of violence that occurred in 1996 during which plaintiff hit defendant with a frying pan causing injury, threw various household items at him and, on one occasion, wrestled him to the ground in an attempt to remove an audio tape from his pocket. As Supreme Court is to be accorded broad discretion as the trier of fact, we find no reason to set aside its determination that defendant met his burden in demonstrating that his physical and mental well-being was threatened so as to render it unsafe or improper to continue to cohabit with plaintiff, thereby entitling defendant to the dissolution of the marriage (*see, Stricos v Stricos*, 263 AD2d 659, 661; *Bailey v Bailey*, 256 AD2d 1030; *Israel v Israel*, 242 AD2d 891). Hence, the judgment of divorce will not be disturbed.

In fashioning the equitable distribution awards, Supreme Court divided personalty between the parties and granted plaintiff a distributive award of $77,073, representing a one-half interest in the parties' equity in the marital residence, two mutual fund accounts, the proceeds in a checking account and the proceeds of a mortgage held by the parties relating to real property they sold during the marriage. Supreme Court denied plaintiff's claim that she was entitled to distribution of some proportion of defendant's interest in Van Dyke Motors and Van Dyke Enterprises, and declined to grant plaintiff any interest in a retirement account to which defendant contributed during the marriage. Plaintiff was further awarded maintenance in the amount of $1,200 per month for 30 months and $7,500 for counsel fees.

Among the various issues raised on this appeal by plaintiff relating to equitable distribution, we find only several that warrant extended discussion. First, Supreme Court properly rejected plaintiff's contention that she is entitled to a greater percentage of the equity in the marital residence because she

plaintiff's previous attorneys are not parties to this appeal, and this prior order does not necessarily affect the judgment of equitable distribution, this issue is not properly before us for resolution (*see*, CPLR 5501 [a] [1]).

contributed separate assets toward purchase of the property. The evidence at trial revealed the parties each contributed comparable economic resources toward the purchase of their first home, which they owned jointly. When this property was sold, the proceeds of sale were commingled and, along with an $80,000 mortgage, were used to finance construction of the house in which the parties resided at the time of their separation. Thus, it is evident the marital residence was financed with a mortgage and marital funds.

We further find no basis warranting reversal of Supreme Court's determination that plaintiff was not entitled to a distributive award relating to defendant's interest in Van Dyke Motors and Van Dyke Enterprises. "It is well settled that property acquired by one spouse as a gift or by inheritance during a marriage and retained separately is not marital property" (*Allen v Allen*, 263 AD2d 691, 692). However, any appreciation in value of such separate property may be subject to distribution if there is a nexus between the titled spouse's efforts and the increase in value and those efforts were " 'aided or facilitated' " by the nontitled spouse (*Hartog v Hartog*, 85 NY2d 36, 46, quoting *Price v Price*, 69 NY2d 8, 18). The nontitled spouse bears the burden of proof on this issue (*see, Allen v Allen, supra*, at 691-692; *Miness v Miness*, 229 AD2d 520, 521).

It is undisputed that defendant's interest in Van Dyke Motors was a gift from his mother and was, therefore, separate property (*see, Allen v Allen, supra*). The evidence at trial demonstrated that the dealership either suffered significant losses or was barely profitable during the relevant time period due to market forces and, as a result, plaintiff failed to prove an appreciation in the value of this separate property resulting from her efforts which could be subject to equitable distribution (*see, Pulice v Pulice*, 242 AD2d 527).

Similarly, because defendant inherited his initial one-third interest in Van Dyke Enterprises from his father, this acquisition was in the nature of separate property (*see, Allen v Allen, supra*). Beginning in December 1994, defendant utilized the income generated from his shares to facilitate the corporate buy-back of his siblings' stock, incurring corporate debt in the amount of $400,000. Plaintiff proffered no evidence that defendant used marital assets to aid in the purchase of his siblings' interests. Moreover, although the gross value of corporate assets increased, primarily as a result of renegotiation of the Niagara Mohawk lease, valuation evidence was presented that this increase was offset by the "buy-back" debt. Indeed, it appears from the record that defendant's appraiser placed the

value of the corporation at the time of the death of defendant's father at $597,000 while, according to the testimony of plaintiff's appraiser that defendant's one-third interest was worth $169,000 at that time, plaintiff placed the total value at $507,000. Thus, even crediting the testimony of plaintiff's appraiser that the net worth of the corporation was $541,000 at the time of commencement of the divorce action, Supreme Court's finding that there was no increase in the value of defendant's interest in the corporation between the time of inheritance and the commencement of the divorce action was "within the framework of the evidence" and will not be disturbed (*Posson v Posson*, 229 AD2d 690, 693).

Furthermore, upon review of the record, we reject plaintiff's claim that she aided and facilitated defendant's corporate activities. At trial, defendant presented evidence that his only significant activity was the renegotiation of the Niagara Mohawk lease over a period of several months in 1994, which culminated in the signing of a new lease in January 1995. The trial evidence indicated that defendant's actions were undertaken primarily from his worksite at the automotive dealership. Since the parties each engaged in homemaking activities and plaintiff did not show that she shouldered additional responsibilities during this time period, plaintiff failed to demonstrate that she contributed to any increase in the value of defendant's separate property and, thus, she would not have been entitled to a proportion of the increase had the property appreciated in value (*see, e.g., Miness v Miness, supra*).

We do, however, determine there was error in declining to grant plaintiff a share of that portion of defendant's NADART retirement account representing contributions made during the marriage, which Supreme Court properly characterized as marital property (*see, Majauskas v Majauskas*, 61 NY2d 481). In light of the fact that Supreme Court granted plaintiff a one-half share in the other marital investments, we see no reason to divest plaintiff of one half of these funds. This matter is, therefore, remitted to Supreme Court for determination of the amount to which plaintiff is entitled based upon defendant's contributions from the date of the marriage to July 1996, the date plaintiff commenced her action for divorce (*see, id.; Lamba v Lamba*, 266 AD2d 515), and for distribution of plaintiff's equitable share in a manner that gives appropriate consideration to any tax consequences (*see, Francis v Francis*, 262 AD2d 1065).

Turning to the issue of maintenance, plaintiff argues that Supreme Court's award of maintenance in the amount of

$1,200 per month for 30 months was inadequate. The purpose of maintenance is to provide a spouse with the opportunity to become economically independent (see, *O'Brien v O'Brien*, 66 NY2d 576, 585; see also, Domestic Relations Law § 236 [B] [6] [a] [3], [4]). "[T]he duration of the award should be that period of time reasonably necessary to allow the spouse to become self-supporting" (*Saxton v Saxton*, 168 AD2d 767, 768; see, *Smith v Smith*, 249 AD2d 813). The evidence at trial established that despite her back injury, plaintiff is an able person capable of supporting herself. She performed well in real estate sales until a recession in the local market prompted her to change careers and take a sales position at the automotive dealership. By all accounts, she was a competent salesperson, earning up to $30,000 per year. Although plaintiff did not pursue steady employment while the divorce action was pending, subsisting in part on a pendente lite award of maintenance in the amount of $350 per week, she testified at trial that she had recently begun a business creating stained glass pieces by commission. Under the circumstances, Supreme Court did not abuse its discretion in establishing the amount of the award nor in limiting the award to a period of 30 months (see, *Allen v Allen*, 263 AD2d 691, 692, supra).

Finally, notwithstanding plaintiff's contentions, we find no abuse of discretion in the counsel fee award of $7,500, especially in light of the pendente lite award of counsel fees in the amount $2,000, accountant's fees of $2,000 and appraiser's fees of $1,500, and plaintiff's significant distributive award (see, *Creighton v Creighton*, 222 AD2d 740).

Plaintiff's remaining contentions have been considered and are found to be unpersuasive.

Cardona, P. J., Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the facts, without costs, by reversing so much thereof as determined that plaintiff had no interest in defendant's NADART 401k plan; matter remitted to the Supreme Court for a determination of plaintiff's equitable share of so much of that account as represents funds contributed during the marriage; and, as so modified, affirmed.