■ SHARON C. HARRINGTON, Respondent-Appellant, v LEIGH E. HARRINGTON, Appellant-Respondent. [752 NYS2d 430] —Peters, J. (1) Cross appeals from an order of the Supreme Court (Coccoma, J.) ordering, inter alia, equitable distribution of the parties' marital property, entered June 4, 2001 in Otsego County, upon a decision of the court, (2) appeal from an order of said court, entered October 26, 2001 in Otsego County, which awarded plaintiff counsel fees, and (3) appeal from two orders of said court, entered November 21, 2001 in Otsego County, which apportioned certain marital assets.

Plaintiff and defendant were married in 1965 and have six children. At the time of the commencement of this divorce action in March 1998, only one child was a minor. After a trial, Supreme Court equally distributed the parties' pension benefits, defendant's 401K plan and the proceeds to be realized from a court-ordered sale of the marital residence, along with

---

the parties' 85 acres of vacant land and their interest in a tavern. Supreme Court granted exclusive possession of the marital home to plaintiff until it was sold. The court also granted plaintiff possession of her Fleet and Smith-Barney IRA accounts, bank account and a joint General Electric (hereinafter GE) credit union account. Defendant was entitled to retain his interests in his Fleet and Smith-Barney IRA accounts, his bank account and stocks. Finally, the court denied plaintiff's request for maintenance.

After a posttrial hearing, Supreme Court further ordered defendant to pay plaintiff's counsel fees upon its finding that defendant had purposely prolonged the litigation in order to financially punish plaintiff. It thereafter issued Qualified Domestic Relations Orders (hereinafter QDROs) providing for the distribution of the 401K and pension plans. Defendant appeals and plaintiff cross appeals from the decision and order of the court ordering, inter alia, equitable distribution* and defendant also appeals from the order awarding counsel fees and from both QDROs.

Although the parties appealed from Supreme Court's decision and order and not the final judgment of divorce, we find that due to the lack of a showing of prejudice and the fact that the order does not differ materially from the judgment, we will exercise our discretion and, in the interest of justice, consider the appeal to have been taken from the final judgment (*see Matter of Troy Sand & Gravel Co. v New York State Dept. of Transp.*, 277 AD2d 782, 783, *lv denied* 96 NY2d 708; *Curtis v Curtis*, 132 AD2d 850, 852, *lv denied* 74 NY2d 616).

Reviewing the equitable distribution of the marital property, we find that Supreme Court properly considered all relevant factors prior to rendering its determination (*see* Domestic Relations Law § 236 [B] [5] [d]; *Butler v Butler*, 256 AD2d 1041, 1042, *lv denied* 93 NY2d 805). In so finding, we note that while the record supports its full review, it was not specifically required to cite the factors it considered (*see Butler v Butler*, *supra* at 1042; *see also O'Connell v O'Connell*, 290 AD2d 774, 775). We reject the contention raised by defendant that equal distribution of the marital assets was an abuse of the court's discretion, since we find this marriage to be of long duration, during which plaintiff made significant noneconomic contributions as a primary caretaker and sole homemaker, further amplified by the discrepancies in their current income and

---

* Although Supreme Court awarded custody of the parties' minor child to plaintiff and required defendant to pay child support, no child support or custody issues were raised on appeal.

future earning capacities (*see* Domestic Relations Law § 236 [B] [5] [d]; *Winnie v Winnie*, 229 AD2d 677, 679). Upon our review of the record, however, we cannot discern whether the court distributed defendant's certificate of deposit valued at $11,284. Since we are remitting the matter, the court should clarify this issue.

We next address the contention that Supreme Court erred in failing to credit plaintiff with $5,000 for repairs that she made to the facade of the marital home. Plaintiff's Central National Bank checking account was fixed at a value of $16,980.90 as of the date of the commencement of the action. Plaintiff documents that the repairs were thereafter paid for from this account. Photographs, submitted in connection with her request for reimbursement, confirm the significant improvement to the marital residence. The house was then appraised and the court, in its order, determined that upon the sale of the marital residence, the proceeds were to be split equally. While recognizing that a trial court's judgment on this issue should be upheld absent an abuse of discretion (*see Munson v Munson*, 250 AD2d 1004, 1004), we conclude that the repairs significantly improved the facade of the home and, absent an articulation of the court's reasons for a denial, such credit must be ordered.

Turning to maintenance, upon reviewing the various factors which must be considered on such award along with its purpose (*see* Domestic Relations Law § 236 [B] [6]; *McAteer v McAteer*, 294 AD2d 783, 784; *Spenello v Spenello*, 274 AD2d 822, 823-824; *Van Dyke v Van Dyke*, 273 AD2d 589, 594), we fail to find record support for Supreme Court's denial of this requested relief. The testimony of Robert Nightingale, plaintiff's supervisor, revealed that she is a flexible part-time clerk who has limited guaranteed hours, thereby making her wages fluctuate from year to year. Plaintiff testified that she suffers from fibromyalgia, either caused or significantly aggravated by the marital stress, which makes it more difficult for her to balance both home and work; this medical condition was documented by record evidence. Further, she testified extensively about the ways in which her career had been tempered by being both the primary caretaker of the parties' six children and a devoted housewife. Reviewing the court's articulated reasons for the denial of maintenance, we find that the court erred in three major respects. First, it included child support in computing plaintiff's income; second, it found that plaintiff was in relatively good health; and third, it concluded that her job was secure and that she had been self-supporting. Moreover, since

an award of maintenance "shall be effective as of the date of the application therefor, and any retroactive amount of maintenance due shall be paid in one sum or periodic sums, as the court shall direct" (Domestic Relations Law § 236 [B] [6] [a]; *see McAteer v McAteer, supra* at 784), we remit the issue of maintenance for a determination as to the amount and duration, as well as an articulation concerning the method of payment for retroactive amounts.

As to the valuation date set by Supreme Court for defendant's 401K account, we find no error. The valuation date, as determined by the court, may be any time from the date of the commencement of the action to the date of trial (*see* Domestic Relations Law § 236 [B] [4] [b]). It is well settled that where increases to a marital asset are passive, that is, affected by outside market influences rather than the actions of the titled spouse, the asset should be valued as closely as possible to the date of trial (*see Campbell v Campbell*, 280 AD2d 837, 838). While defendant contended that the increases in such account were due to his sole efforts and income, he failed to proffer sufficient evidence to demonstrate that he actively managed the fund during that period.

Nor do we find the application of the *Majauskas* formula (*see Majauskas v Majauskas*, 61 NY2d 481, 485-486) to the parties' pension plans to have been in error. Recognizing that the distribution of vested rights in such program is based upon "considerations of fairness and the respective situations of the parties" (*Butler v Butler*, 256 AD2d 1041, 1045, *supra*), the record established that both plaintiff and defendant had defined pension benefit plans acquired after the date of their marriage (*see Majauskas v Majauskas, supra* at 485-486). As to contentions challenging the distribution of benefits pursuant to *Majauskas* or to the division of benefits, we find no merit. However, to the extent that the issued orders do not permit either party, as an alternate payee, to draw on the participant's pension at the time that he or she may first become eligible to retire under the plan, options permitted under the Federal Employee Retirement Income Security Act of 1974 (*see* 29 USC § 1056 [d] [3] [A]; *see also* Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § C236B:7), Supreme Court is encouraged, upon remittal, to indicate eligibility.

Finally reviewing the determination that defendant pay plaintiff's counsel fees, a discretionary determination requiring the consideration of the financial circumstances of both parties together with all other circumstances of the case (*see*

*DeCabrera v Cabrera-Rosete*, 70 NY2d 879, 881; *see also* Domestic Relations Law § 237 [a]), we find the order wholly appropriate; "[i]ndigency is not a prerequisite to an award" (*DeCabrera v Cabrera-Rosete, supra* at 881). The lengthy evidentiary hearing held to determine entitlement thereto fully detailed that the award was based upon, inter alia, defendant's "attempts to wear down and/or financially punish [plaintiff] by prolonging the litigation."

Cardona, P.J., Mercure, Spain and Rose, JJ., concur. Ordered that the orders entered June 4, 2001 and November 21, 2001 are modified, on the law and the facts, without costs, by reversing so much thereof as (1) denied plaintiff maintenance and a credit for repairs she made to the facade of the marital residence, and (2) failed to indicate eligibility to draw on each person's pension; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and as so modified, affirmed. Ordered that the order entered October 26, 2001 is affirmed, without costs.