■ Mona Golub, Respondent, v Marc Ganz, Appellant. [802 NYS2d 526]—

Carpinello, J. Appeal from a judgment of the Supreme Court (Eidens, J.), entered May 14, 2004 in Schenectady County, inter alia, granting plaintiff a divorce and ordering equitable distribution of the parties' marital property, upon a decision of the court.

On April 17, 2002, plaintiff commenced this action for divorce and equitable distribution after 6½ years of marriage to defendant by summons with notice. The original complaint dated April 30, 2002 asserted cruel and inhuman treatment as the sole ground for divorce. An amended complaint served on August 6, 2002 added a second cause of action for adultery. The alleged adultery was committed on or about June 30, 2002 and July 1, 2002. The matter then proceeded in three essential phases of trial—grounds and custody, temporary visitation and equitable distribution and visitation.

Ultimately, plaintiff was granted a divorce on both grounds asserted in the amended complaint and awarded sole custody of the parties' only child, a son now almost nine years old, and defendant was granted specific visitation. Defendant was also ordered to pay child support, private school expenses for two particular school years only and $10,000 in counsel fees to plaintiff. During the equitable distribution phase, a significant amount of testimony surrounded plaintiff's role in the Golub Corporation, a family-run business, because defendant was seeking a share of the appreciation in her premarital stock in this corporation. Supreme Court found that the appreciation in the value of this stock during the marriage was not marital property and thus not subject to equitable distribution. Defendant appeals raising numerous issues.

We address first defendant's claim that he was somehow thwarted in his efforts to defend against both divorce grounds because Supreme Court improperly quashed a subpoena for a particular nonparty witness. At no time in the proceedings before Supreme Court did defendant ever indicate the need for

this witness's testimony to refute plaintiff's divorce grounds.[1] Indeed, by the time the subpoena was served on this person, the grounds trial had already been completed. Moreover, by the time defendant submitted an affidavit in opposition to a motion to quash this subpoena, among other subpoenas, the decision on grounds had been rendered. In this affidavit, defendant averred that this witness's testimony was necessary and relevant to plaintiff's role in the operation of the Golub Corporation. Tellingly absent is any allegation that it was also necessary to the then-decided grounds dispute. Under these circumstances, defendant's contention that Supreme Court, in quashing the subpoena, improperly precluded "effective testimony" relative to the grounds for divorce is without merit.

Defendant also argues that Supreme Court should not have granted a divorce on the basis of adultery because, among other meritless reasons, his only act of adultery took place after the action was commenced and because plaintiff's own alleged adultery constitutes a complete defense to his adultery under Domestic Relations Law § 171 (4). As to this first contention, we note that the plain language of Domestic Relations Law § 170 (4) defines adultery as "the commission of an act of sexual or deviate sexual intercourse, voluntarily performed by the defendant, with a person other than the plaintiff after the marriage of plaintiff and defendant." Thus here, defendant's adultery—committed after the parties were married but before any judgment of divorce—certainly fits within the parameters of the statute (*see Shuffman v Shuffman*, 6 AD2d 1030 [1958]; *Otto v Otto*, 220 App Div 130, 131-132 [1927]; *but see Hallingby v Hallingby*, 159 Misc 2d 988 [1993]). Since no provision of the Domestic Relations Law precludes plaintiff from obtaining a divorce upon acts of adultery that occur after an action is commenced and because no prejudice has been demonstrated, or even alleged, by defendant with respect to this amendment to the complaint, we are satisfied that a divorce could be granted on this ground (*see e.g. Dougherty v Dougherty*, 256 AD2d 714, 715 [1998]; *Bizzarro v Bizzarro*, 106 AD2d 690 [1984]; *Maulella v Maulella*, 90 AD2d 535 [1982]; *Kaufman v Kaufman*, 87 AD2d 1002 [1982]; *Shuffman v Shuffman, supra*; *see also* Scheinkman, New York Law of Domestic Relations § 10.72, at 303-305 [11 West's NY Prac Series 1996]; 1 Foster, Freed and Brandes,

---

1.  At the phase of the trial on grounds and custody, defense counsel specifically stated that "[m]y only witness relative to these issues is going to be my client." As that hearing neared its conclusion, defense counsel further indicated that he did not "believe that . . . defendant has any further proof with respect to the issues of fault or custody."

Law and the Family New York § 6:9, at 392 [2d ed]; 1 New York Civil Practice: Matrimonial Actions § 18.01 [5], at 18-5 [Release No. 68 March 2005]).[2]

Nor was the proof adduced at trial—plaintiff's acknowledgment that she became "romantically involved" with another during the late summer of 2002—sufficient to establish that she herself committed adultery such that the defense of recrimination was established (*see Hunter v Hunter*, 206 AD2d 700, 701 [1994]). Moreover, since plaintiff's adultery was not established by independent satisfactory evidence in the first instance, no negative influence arises from her invocation of the Fifth Amendment right against self-incrimination when asked at trial if she engaged in a sexual relationship with another (*see Butler v Butler*, 134 NYS 108 [1912], *affd* 153 App Div 900 [1912]; *see also* Scheinkman, New York Law of Domestic Relations § 10.40, at 279 [11 West's NY Prac Series 1996]; 1 New York Civil Practice: Matrimonial Actions § 18.02 [4] [e], at 18-16 [Release No. 68 March 2005]). As a final matter with respect to the issue of grounds, we find no reason to set aside Supreme Court's determination that plaintiff met her burden in demonstrating that her physical and mental well-being was threatened so as to render it unsafe or improper to continue to cohabit with defendant during this short term marriage thereby entitling her to a divorce on cruel and inhuman treatment grounds as well (*see* Domestic Relations Law § 170 [1]; *see also Pfoltzer v Morris-Pfoltzer*, 9 AD3d 615, 616 [2004]).

Next, we find no basis warranting reversal of Supreme Court's determination that defendant was not entitled to a distributive award relating to the appreciation of plaintiff's premarital stock in the Golub Corporation during the marriage. "When a nontitled spouse's claim to appreciation in the other spouse's separate property is predicated solely on the nontitled spouse's indirect contributions, *some* nexus between the titled spouse's active efforts and the appreciation in the separate asset is required" (*Hartog v Hartog*, 85 NY2d 36, 46 [1995] [citations omitted]). Moreover, "to the extent that the appreciated value of separate property is *at all* 'aided or facilitated' by the nontitled spouse's direct or indirect efforts, that part of the appreciation is marital property subject to equitable distribution" (*id.* 46, quoting *Price v Price*, 69 NY2d 8, 18 [1986]). Defendant

---

2. To the extent that the amended complaint was served without leave of Supreme Court, and beyond the time period permitted as of right under CPLR 3025, there was apparently no objection by defendant. He did, however, assert as an affirmative defense that the acts of alleged adultery postdated the commencement of the action.

bears the burden of proof on this issue (*see Van Dyke v Van Dyke*, 273 AD2d 589, 592 [2000]).

Here, the evidence at trial convincingly demonstrated that the appreciation in the stock that plaintiff received prior to the marriage cannot be attributed to her active efforts during the marriage. First, the subject stock is nonvoting, preferred stock. Indeed, plaintiff has never owned any of the corporation's common, voting stock. As of the trial in this matter, this stock was held solely by her father and uncle. Moreover, the record reveals that plaintiff is but one of hundreds of midlevel managers amongst the corporation's 102 grocery stores and 22,000 employees and has specifically eschewed any career track which would ultimately place her in a high corporate position.

Testimony specifically established that plaintiff, as a midlevel manager, has no role in corporate policy-making decisions, has no input into corporate procedures and is not even the manager of an income-producing department. Rather, she is in marketing. Nor has she ever been consulted by any member of corporate management or the board of directors regarding anything other than her specific duties. The record further satisfies us that none of the positions ever held by plaintiff, nor her attendance at corporate meetings or charitable events, has affected the profitability of the corporation.

Rather, according to the corporation's senior vice-president of finance and chief financial officer, only about 15 people in the corporate structure actually affect its profitability, including the corporation's president and chief executive officer, its senior management team and certain vice-presidents. Significantly, plaintiff has never held any of these positions. Nor has she ever served on the corporation's board of directors. In sum, while plaintiff readily admitted that she has attended a few board of directors meetings and certain charitable events in a personal capacity, we conclude that Supreme Court correctly found that defendant failed in his burden of demonstrating that the appreciation in her premarital shares of the corporation's stock was due in part to her contributions or efforts (*see Lawson v Lawson*, 288 AD2d 795 [2001]; *Van Dyke v Van Dyke, supra*). Furthermore, we also reject defendant's claim that he aided and facilitated plaintiff's activities with respect to the Golub Corporation such that he would have been entitled to a proportion of the increase in any event (*see Van Dyke v Van Dyke, supra* at 593).

Nor will we disturb the award of sole custody of the parties' child to plaintiff as Supreme Court's decision in this regard has a sound and substantial basis in the record. The record is replete

with examples of defendant's demonstrated inability to act and communicate in a mature and civilized fashion when it comes to his relationship with plaintiff such that joint custody was not a workable option for these parents (*see Braiman v Braiman*, 44 NY2d 584, 589-590 [1978]; *Matter of Hartman v Hartman*, 214 AD2d 780, 781 [1995]). Turning to the issue of child support, an error did occur in the court's calculation which warrants the matter to be remitted for clarification.

Fundamentally, in determining the amount of child support, a court must ascertain the combined parental income (*see* Domestic Relations Law § 240 [1-b] [c] [1]), multiply that amount, up to $80,000, by the appropriate child support percentage and then prorate such amount in the same proportion as each parent's contribution to the combined parental income (*see* Domestic Relations Law § 240 [1-b] [c] [2]). If the court finds that the noncustodial parent's pro rata share of the basic child support obligation is "unjust or inappropriate" (Domestic Relations Law § 240 [1-b] [f]), it may order the noncustodial parent to pay an amount it finds "just and appropriate" (Domestic Relations Law § 240 [1-b] [g]).

Here, instead of multiplying the appropriate child support percentage (17%) to the first $80,000 of the parties' combined parental income and then prorating this amount in the same proportion as each party's contributions thereto (Supreme Court determined that the incomes of the parties were approximately equivalent), the court simply applied 17% to the first $80,000 and ordered defendant to pay this entire amount ($1,133 per month). While defendant would have this Court simply divide $1,133 in half and modify child support to the sum of $566.50 per month, this we will not do. Presumably, Supreme Court found no reason to exercise its discretion to apply the child support percentage above the $80,000 cap (*see Matter of Gluckman v Qua*, 253 AD2d 267, 270 [1999], *lv denied* 93 NY2d 814 [1999]), because of its erroneous application of the statute and the resulting miscalculation that defendant's basic child support obligation was $1,133 per month. We thus remit the matter to Supreme Court for reconsideration of child support.

Finally, neither the minimal award of counsel fees, which was based on defendant's conduct during litigation vis-à-vis a certain discovery issue, nor the limited award of educational expenses was an abuse of discretion.

To the extent not discussed, all other contentions have been considered and rejected.

Cardona, P.J., Mercure, Spain and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law, without

costs, by reversing so much thereof as awarded child support; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.