■ BARBARA ZZ., Respondent, v DANIEL A., Appellant. (And Six Related Proceedings.) [882 NYS2d 570]—

Spain, J. Appeal from an order of the Supreme Court (Breen, J.), entered July 23, 2008 in Warren County, which, among other things, awarded plaintiff custody of the parties' son.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) married in 1995 and lived with the mother's two daughters—ages nine and three—from another relationship. Thereafter, the parties had two children, Elizabeth ZZ. (born in 1996) and Daniel ZZ. (born in 2000) (hereinafter the children). When the parties separated in 2002 or 2003, the father moved into his parents' home in the Town of Stillwater, Saratoga County, where he continues to reside. The children lived with the mother, who had primary physical custody, and their older half sisters, in an apartment in the Village of Ballston Spa, Saratoga County, while the father had regular visitation.

In August 2006, the parties agreed in Family Court, Saratoga County, to a shared alternating weekly joint custody arrangement; the mother then moved to the Town of Warrensburg, Warren County to live with her new boyfriend. When she experienced transportation problems, the mother ultimately agreed to the children living primarily with the father and that she would have alternating weekend time with the children, who were having difficulty adjusting to her move. In February 2007, Family Court entered a new order, upon the parties' consent, awarding them joint legal custody of the children with primary physical custody to the father and weekend and midweek parenting time with the mother. In March 2007, Family Court, on the Law Guardian's motion, temporarily changed physical custody of Elizabeth to the mother, and, in July 2007, the mother commenced this divorce action in Supreme Court in Warren County. During this ongoing custody battle, the parties each filed modification of custody petitions and violation petitions, and the mother filed a family offense petition, and all such proceedings were removed to Supreme Court. Prior to trial, Supreme Court issued an October 15, 2007 temporary order of custody and visitation providing for both children to reside with the father, with visitation to the mother. At the opening of the trial the mother consented to the court granting

custody of Elizabeth to the father because the child was estranged from her. The mother indicated that she would engage in therapeutic counseling with Elizabeth, and desired full visitation with her as soon as it could be accomplished.

During the trial, Supreme Court met with the children in a *Lincoln* hearing, and ultimately issued the subject custody and parenting order which granted sole legal and primary physical custody of Daniel, then age seven, to the mother and, as consented to by the mother, sole legal and physical custody of Elizabeth, then age 11, to the father. The order provided for weekend parenting time in which the children, together and individually, would spend time with each parent, and alternating weekly time during the summers. That order was incorporated but not merged into the parties' subsequent judgment of divorce, and the father now appeals challenging the award of custody of Daniel to the mother.[1]

A review of the testimony and evidence submitted at this trial reveals a substantial change in circumstances demonstrating an imperative need for immediate change to ensure the best interests and health of the children (*see Matter of Colwell v Parks*, 44 AD3d 1134, 1135 [2007]). Further, the record overwhelmingly provides a sound and substantial basis for Supreme Court's determination granting the mother sole legal and primary physical custody of Daniel and for not keeping the children together (*see Matter of Bush v Stout*, 59 AD3d 871, 873 [2009]).

As Supreme Court's meticulously detailed and exhaustive decision and order accurately summarizes, the children have been emotionally scarred by the constant fighting between the parties, who have exhibited "such immaturity and poor judgment" that the court rightly saw fit to expressly warn them that continuing such behaviors would result in an investigation of neglect of the children and, if appropriate, a removal to foster care, a sentiment echoed by the children's Law Guardian of six years. The record reflects that the children have endured years of strife, upheaval, instability, family dysfunction and emotional neglect, resulting in counseling and therapy, psychiatric diagnoses and hospitalizations, suicidal gestures, child protective investigations, and significant behavioral problems. Aggression and other unhealthy behaviors developed in the relationship between the children who, despite their obvious love for

---

1. Although the father only appealed from the custody and parenting order rather than the subsequent judgment of divorce incorporating that order, we deem the appeal as taken from the judgment of divorce as well (*see Harrington v Harrington*, 300 AD2d 861, 862 [2002]).

one another and for both parents, have been impaired by the parties' poor parenting, particularly that of the father. A psychologist evaluated the parties, the mother's boyfriend and the children, reviewed the children's therapy and mental health history and observed the children with the parties. Her report confirms Supreme Court's assessment of the parties' impaired behavior and the resulting serious consequences to the children.

To begin, given the parties' embattled custodial history and testimony conceding their total inability to communicate or co-operate on matters concerning the children, joint custody of Daniel is out of the question (*see Matter of Edwards v Roths-child*, 60 AD3d 675, 676-677 [2009]). On the issue of Daniel's best interests, we accord deference to Supreme Court's assess-ment that the mother's testimony was more credible than that of the father (*see Matter of Colwell v Parks*, 44 AD3d at 1135-1136). With regard to the father's claim that he is better able to handle Daniel's needs, his "past performance" (*Matter of De Hamel v Porto*, 22 AD3d 893, 894 [2005]) does not support that assertion. The record is replete with instances in which the father unjustifiably denied Daniel court-ordered parenting time or telephone contact with his mother, created stress at turnover times, attempted to alienate him from his mother, and discussed inappropriate adult matters (including this litigation) with him, causing him to be emotionally conflicted. Examples of his behavior include refusing to provide the mother with Daniel's medication, denying the mother any time with the children dur-ing the 2006 winter holidays, and dumping the children's belongings in the parking lot at the mother's residence in re-sponse to a court-ordered custody change. He fails to understand that his obstructionist way of life has caused serious behavioral problems and a deterioration in the emotional health[2] of the children and contributed to the problems in their sibling rela-tionship.

With regard to the mother, the evidence supports the finding that Daniel is very bonded to her and that, when she had pri-mary custody, she encouraged his relationship with the father, abided by court orders and regularly accommodated the father's requests for additional time. She also has a degree of apprecia-tion for the stress that the parties' behavior and custody battle has had on the children, and has diligently pursued counseling for them since 2002. Indeed, she is not faultless and has made bad choices that have contributed to this chaotic situation, including abruptly moving an hour away in 2006 to live with

---

**2.** In June 2007, Daniel was admitted to a mental health facility after threatening to burn down his father's house.

her boyfriend, making the already tumultuous arrangement even worse for the children. However, giving due consideration to all relevant factors, including Daniel's good relationship with the mother's boyfriend, the parties' past performance and their capacity to guide Daniel's development, address his mental health and emotional needs, encourage his relationship with the other parent and abide by court orders, as well as the psychological evaluations and the Law Guardian's well-informed advocacy (*see id.* at 894), we find that the determination that Daniel's best interests are served by awarding sole legal and primary physical custody to the mother has a sound and substantial basis in the record and should not be disturbed.

Further, while "siblings should generally be kept together, this rule is not absolute and may be overcome where [as here] . . . 'the best interest of each child lies with a different parent'" (*Matter of Jelenic v Jelenic*, 262 AD2d 676, 677 [1999], quoting *Matter of Copeland v Copeland*, 232 AD2d 822, 823 [1996], *lv denied* 89 NY2d 806 [1997]). The record reflects that the children often fought and that Elizabeth dominated and often hit Daniel, repeating dysfunctional behavior patterned by her parents. Supreme Court rationally concluded that it would be in Daniel's best interests to live with his mother separately from Elizabeth while regularly spending time with her during weekend and summer visitations. Elizabeth was estranged from her mother and had refused all contact or calls from her since September 2007 and wished to remain with the father. Each of the children, as well as their relationships with one another and with their parents, has suffered immeasurably during this ongoing struggle between the parties. We find that, under these unfortunate circumstances, the court rationally concluded that Daniel's best interests lie in living separately from his sister.

Finally, contrary to the father's claim on appeal, we find that the Law Guardian appropriately and tirelessly represented each of the children, with whom she has had close, active attorney-client relationships for over six years. At all stages, the Law Guardian helped them effectively express their wishes to Supreme Court, while zealously advocating separately for their particular wishes and interests (*see Matter of Carballeira v Shumway*, 273 AD2d 753, 755-756 [2000], *lv denied* 95 NY2d 764 [2000]; *see also* Family Ct Act § 241). The Law Guardian made innumerable efforts to monitor the children's well-being and communicate with the parents, mediated between them and, over the years, negotiated various custodial and parenting arrangements to address the serious ongoing and escalating problems experienced by the children. Contrary to the father's

claim, raised for the first time on appeal, we see no error in the Law Guardian representing both children given the absence of any potential conflict of interest (see *Corigliano v Corigliano*, 297 AD2d 328, 329 [2002]; *Matter of Rosenberg v Rosenberg*, 261 AD2d 623, 624 [1999]; *Matter of Zirkind v Zirkind*, 218 AD2d 745, 746 [1995]; see also 22 NYCRR 1200.24 [c]).

The father's remaining claims have been considered and found to lack merit.

Peters, J.P., Lahtinen, Kavanagh and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.