■ DONNA L. CARR, Respondent-Appellant, v JOSEPH B. CARR, Appellant-Respondent. [738 NYS2d 415] —Mercure, J.P. Cross appeals from a judgment of the Supreme Court (Hughes, J.H.O.) ordering, inter alia, equitable distribution of the parties' marital property, entered September 6, 2000 in Albany County, upon a decision of the court.

The parties were married on August 28, 1987. At that time, defendant was a lawyer with a 16% to 20% partnership inter-

est in the law firm of McClung, Peters and Simon (hereinafter the firm). Plaintiff had been a legal secretary at the firm for a little less than three years but discontinued her employment in anticipation of her marriage to defendant. The parties moved into a large luxurious home in the Village of Menands, Albany County, that defendant purchased five months prior to the marriage at a total cost of approximately $410,000. During the marriage, the parties expended an additional $350,000 on additions, improvements and remodeling of the marital residence. The parties had one child, a daughter born in August 1988. On May 13, 1999 plaintiff commenced this action for a divorce on the ground of cruel and inhuman treatment. Defendant counterclaimed for a divorce on the same ground. The parties thereafter stipulated to an uncontested divorce in favor of plaintiff on the ground of constructive abandonment and an award of joint custody of their daughter with primary physical custody to plaintiff, and a nonjury trial was conducted in March 2000 on the disputed issues of, as here relevant, maintenance, child support and equitable distribution.

Supreme Court thereafter rendered a decision awarding plaintiff child support of $490 per month and maintenance of $400 per month for a period of one year only, based on defendant's reasonably expected income of $44,620, which was the amount he received from employment earnings in 1999, and his obligation to pay maintenance of $41,500 per year to his wife from a prior marriage until September 2006. Supreme Court valued the marital residence at $650,000 in accordance with the parties' stipulation and determined that the initial downpayment of $130,000 and $65,000 of separate funds that defendant applied toward repayment of the principal of the mortgage loan during the marriage constituted defendant's separate property, but that the balance of the appreciation in the net value of the property was attributable to substantial improvements and mortgage payments made from marital assets, as well as market forces, and constituted marital property. Supreme Court directed that the marital residence be sold, that defendant be paid the first $195,000 of the net proceeds and that the balance be divided equally between the parties. Pending sale, plaintiff was awarded exclusive use and possession of the marital residence and was required to pay all current expenses attributable thereto. The parties' investment, profit-sharing and individual retirement accounts, totaling approximately $1.1 million, were distributed 60% to defendant and 40% to plaintiff. Finally, plaintiff was awarded all of the jewelry that defendant had given her, valued at $67,294, the furniture in the marital residence and a Jaguar automobile, on

which no overall value was placed; Saab and Honda automobiles, on which no overall value was placed, were awarded to defendant. The parties cross-appeal from the judgment embodying Supreme Court's determinations.[1]

Initially, we reject plaintiff's assertions of error concerning Supreme Court's award of durational maintenance and its refusal to make provision for life insurance on defendant's life or private schooling for their daughter. The essential flaw underlying all of plaintiff's contentions, recognized and carefully clarified by Supreme Court near the end of the trial, is that she seeks an award of maintenance based on what she characterizes as defendant's "proven capacity to earn" and not on the economic realities in effect at the time of trial. In the mid-1990s, defendant found himself in the enviable position of holding a 52% partnership interest in a law firm that had developed a very lucrative practice representing injured railroad workers in actions brought under the Federal Employers' Liability Act (hereinafter FELA). By that time, the firm's founding partners had died and their primary successors had retired, leaving the greater part of the firm in defendant's hands. Ironically, defendant took very little part in the personal injury work that accounted for at least 80% of the firm's income. His specialty was transactional lending matters and most of his practice was involved with representing Chemical Bank.

In any event, the undisputed evidence adduced at trial showed that the firm suffered a tremendous decrease in revenues from 1996 to 1999, primarily due to a reduction in its FELA caseload, largely resulting from a decrease in the number of railroad workers and a significant improvement in railroad industry safety procedures. Even defendant's banking work dropped from a high of around $300,000 per year to about $50,000 and was ultimately lost altogether when Chemical Bank merged with another bank. The evidence shows that defendant's partnership income went from $385,282 in 1992 to a high of $547,537 in 1995 and then to $363,351 in 1996, $192,104 in 1997, $212,967 in 1998 and finally to $44,620 in 1999. At the time of trial, the firm was about to close its doors,[2] and defendant was personally liable for the repayment of a

1. Plaintiff's notice of cross appeal expressly limits her appeal to so much of Supreme Court's judgment as "grants an amount of maintenance," "fails to provide for life insurance. on [defendant]," and fails to provide for private education for the parties' daughter. We will limit our analysis accordingly (see, Bell v Bell, 181 AD2d 978, 979; Marocco v Marocco, 53 AD2d 707, 708).

2. Although outside the record, the parties' briefs inform us that the firm was in fact dissolved.

$200,000 loan from Key Bank and $156,000 in unpaid salary to one of the firm's former partners. Despite his past good fortune, at the time of trial in March 2000 defendant could be properly viewed as a 55-year-old general practitioner who was about to lose his job but had a subsisting maintenance obligation of $41,500 per year.

Although plaintiff obtained only a high school diploma, never earned more than $14,000 per year and was out of the job market for 12 years, we surely cannot subscribe to her present contention that she "is under no obligation, other than dire necessity, to work." At trial, a personnel specialist testified that she viewed a videotape of plaintiff's deposition testimony describing plaintiff's work history and felt that plaintiff had an excellent appearance, good grammar and good demeanor and that she could work well with professionals. Based upon those attributes and plaintiff's prior work experience, it was the witness's opinion that with a refresher computer course, plaintiff could obtain work in a law office paying up to $30,000 within a year or a year and a half. Plaintiff offered no opposing evidence.

Considering, first, that plaintiff had as her own separate property a Trustco account with a balance of over $77,000 as of the date of commencement of the action as well as income-producing property in Rensselaer County and, second, that Supreme Court's distribution of the parties' marital property will endow plaintiff with nearly $700,000 in additional liquid assets, we are not persuaded that the award of maintenance was insufficient (*see, Gandhi v Gandhi*, 283 AD2d 782, 785-786; *see also*, Domestic Relations Law § 236 [B] [6] [a] [1]). Although Supreme Court's written decision does not expressly address the issue of the parties' predivorce standard of living (*see*, Domestic Relations Law § 236 [B] [6] [a]), admonitions it made to the parties at trial made it clear that the court viewed the parties' mid-1990s standard of living as a thing of the past, no longer attainable by either of them. We are in complete agreement with that conclusion (*see, Pejo v Pejo*, 213 AD2d 918, 919, *lv denied* 85 NY2d 811).

Completing our analysis of the issues identified in plaintiff's notice of appeal, we perceive no abuse of discretion in Supreme Court's refusal to provide for life insurance or private schooling. Given defendant's age, his good health and the limited time period within which he will be paying support, Supreme Court was not required to provide for life insurance (*see, Lawson v Lawson*, 288 AD2d 795, 800-801; *Pejo v Pejo, supra* at 919). Further, although the parties' daughter had previously at-

tended private school, the sharp drop in defendant's income rendered private schooling an unnecessary luxury and plaintiff herself indicated that she wanted to remain within the Village of Menands because all of the child's friends attended public school there.

We now turn to defendant's appeal and the thorny legal issues surrounding the valuation, classification, distribution and ultimate disposition of the marital residence. As earlier noted, the marital residence was purchased by defendant just prior to the parties' marriage at a total cost of approximately $410,000. Defendant's trial testimony establishes that he paid $130,000 of separate funds at the time of closing and an additional $15,000[3] for "extras" prior to the marriage and that the balance was financed by a $265,000 mortgage loan. Defendant came forward with evidence sufficient to establish, and Supreme Court correctly found, that defendant utilized separate property—an inheritance from his father—to pay off $65,000 of the mortgage loan and defendant concedes that the remaining $200,000 was satisfied with marital funds. In addition, defendant testified that at least $350,000 was expended on improvements to the marital residence during the parties' marriage. Because the expenditures were made during the marriage, we are entitled to presume that marital funds were utilized (see, Galachiuk v Galachiuk, 262 AD2d 1026, 1027; Walasek v Walasek, 243 AD2d 851, 854), and defendant makes no contrary claim in any event. Finally, the parties stipulated that the marital residence was worth $650,000 as of the time of its valuation on November 17, 1999.

As can be seen, the money expended on the marital residence, $760,000, exceeds the value of the property by over $100,000, thus constraining the conclusion that there was no appreciation in its value. Under the circumstances, no claim can be made that any part of the value of the residence should be considered marital property by virtue of plaintiff's active efforts (compare, Hartog v Hartog, 85 NY2d 36, 46; Price v Price, 69 NY2d 8, 18). That is not to say, however, that plaintiff is without a remedy. To the contrary, she is entitled to recoup her equitable share of the marital funds used to reduce the indebtedness and pay for improvements to the property (see, Markopoulos v Markopoulos, 274 AD2d 457, 458-459; Micha v Micha, 213 AD2d 956). Supreme Court's resolution, which essentially treats the marital residence as marital property but permits defendant to recoup his separate contribution, is theoretically incorrect but brings about an appropriate result.

---

3. Defendant asserts no claim regarding this $15,000 expenditure.

If anything, by insuring defendant's recovery and subjecting the marital share to the vagaries of the real estate market, Supreme Court's approach may be overly generous to defendant.

Similarly, although defendant is technically correct in his contention that Supreme Court lacked authority to compel the sale of this separate property (*see, Burgio v Burgio*, 278 AD2d 767, 768-769), we cannot see how defendant could possibly improve his position by first staying and now permanently preventing such a sale as the parties are in essential agreement that neither of them can possibly afford the $40,000 annual expenses attributable to the property. Nonetheless, giving defendant the benefit of his legal argument, we shall modify Supreme Court's judgment to the extent of vacating the provision for the sale and distribution of the proceeds of the marital residence and in its place providing for defendant's payment of a distributive award of $227,500[4] to plaintiff within 60 days following the date of this Court's decision and requiring plaintiff to vacate the marital residence within 60 days following her receipt of the same.

The parties' remaining contentions are either unpreserved for our consideration, have been waived, are not properly before us or have been considered and found to be unavailing.

Crew III, Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as ordered the sale of the marital residence at 7 Edgewood Circle in the Village of Menands, Albany County, distributed the proceeds of such sale and awarded plaintiff exclusive use and possession of the property pending its sale; it is hereby adjudged that said marital residence is defendant's separate property but that $455,000 of the value thereof is subject to recoupment as marital property, that one half of that sum be distributed to plaintiff in the form of a $227,500 distributive award to be paid to her by defendant within 60 days following the date of this Court's decision, and that plaintiff vacate the marital residence and turn over possession to defendant within 60 days following her receipt of said distributive award; and, as so modified, affirmed.

---

**4.** One half of the difference between the $650,000 value of the property and the $195,000 in separate funds that defendant was found to have contributed.