[931 NE2d 1039, 905 NYS2d 783]

Ronald Fields, Appellant, v Lucille Fields, Respondent.

Argued May 4, 2010; decided June 10, 2010

**POINTS OF COUNSEL**

*Arnold Davis,* New York City, for appellant. I. Husband's interest in the apartment building, having been purchased in his own name with funds received by him as a gift, was his separate property. The building increased in value from capital contributions from his mother, from its tenants' rents and from passive market conditions. Plaintiff's interest was never converted into marital property. (*Allen v Allen,* 263 AD2d 691; *Embury v Embury,* 49 AD3d 802; *Chiotti v Chiotti,* 12 AD3d 995; *Sarafian v Sarafian,* 140 AD2d 801; *Spector v Spector,* 136 AD2d 939; *Cappiello v Cappiello,* 66 NY2d 107; *Falgoust v Falgoust,* 15 AD3d 612; *Pullman v Pullman,* 176 AD2d 113; *Heine v Heine,* 176 AD2d 77, 80 NY2d 753; *Cooper v Cooper,* 52 AD3d 429.) II. Defendant wife failed to demonstrate that she had contributed to the active or passive appreciation in the building's value. Her purported direct and indirect efforts had no effect at all upon the market value of the building. (*Hartog v Hartog,* 85 NY2d 36; *Price v Price,* 69 NY2d 8; *Pauk v Pauk,* 232 AD2d 386; *Xikis v Xikis,* 43 AD3d 1040; *Embury v Embury,* 49 AD3d 802; *Juhasz v Juhasz,* 59 AD3d 1023; *Lord v Lord,* 124 AD2d 930; *Ritz v Ritz,* 21 AD3d 267.) III. It was a gross abuse of discretion to have fashioned a distributive award to wife based upon husband's interest in the apartment building. The parties did not occupy an economic relationship. (*Galvin v Francis,* 20 AD3d 550; *Naimollah v De Ugarte,* 18 AD3d 268; *Sutka v Sutka,* 299 AD2d 540, 99 NY2d 510; *Majauskas v Majauskas,* 61 NY2d 481.) IV. The overwhelming weight of evidence indicates that the predominance of funds in the building account came from rents received, mortgage proceeds and inherited funds. The conclusion that husband's interest in the building fund account was transmuted into marital property was erroneous. The evidence below demonstrates that only some $20,000 of the husband's marital earnings were deposited into that account. (*Bloch v Bloch,* 10 Misc 3d 1058[A], 2005 NY Slip Op 52021[U].)

*Hoffman, Polland & Furman, PLLC,* New York City (*Elliot R. Polland* of counsel), for respondent. I. The Appellate Division properly concluded that premises 318 West 107th Street is

marital property. (*Murphy v Murphy,* 4 AD3d 460; *McLoughlin v McLoughlin,* 63 AD3d 1017; *George v George,* 237 AD2d 894; *Saasto v Saasto,* 211 AD2d 708; *Bossard v Bossard,* 199 AD2d 971; *Judson v Judson,* 255 AD2d 656; *Embury v Embury,* 49 AD3d 802; *DiBlasi v DiBlasi,* 48 AD3d 403; *Sarafian v Sarafian,* 140 AD2d 801; *Bartha v Bartha,* 15 AD3d 111.) II. The Citibank account is marital property. (*Chernoff v Chernoff,* 31 AD3d 900; *Chiotti v Chiotti,* 12 AD3d 995; *Judson v Judson,* 255 AD2d 656; *Carney v Carney,* 202 AD2d 907.) III. The court below properly granted respondent a distributive award of appellant's interest in 318 West 107th Street and his interest in the Citibank account. (*Florio v Florio,* 25 AD3d 947; *Miller v Miller,* 128 AD2d 844; *Graves v Graves,* 307 AD2d 1022; *McKnight v McKnight,* 18 AD3d 288; *Oster v Goldberg,* 226 AD2d 515, 88 NY2d 811; *Saleh v Saleh,* 40 AD3d 617; *Volponi-Hotton v Hotton,* 2 AD3d 437; *O'Brien v O'Brien,* 66 NY2d 576; *Falgoust v Falgoust,* 15 AD3d 612; *Zelnik v Zelnik,* 169 AD2d 317.) IV. The court below correctly valued 318 West 107th Street as of the date of trial. (*Bartek v Draper,* 309 AD2d 825; *D'Angelo v D'Angelo,* 14 AD3d 476; *Ierardi v Ierardi,* 151 AD2d 548.)

## OPINION OF THE COURT

Graffeo, J.

The principal issue raised in this matrimonial case is whether husband's one-half interest in the parties' residence—a Manhattan townhouse that husband purchased during the marriage and where the parties have lived for nearly 30 years—is marital property. We conclude that the value of husband's one-half interest in the townhouse constitutes marital property subject to equitable distribution and we therefore affirm the Appellate Division order.

### I.

As we have previously observed, although the manner in which marital property is distributed falls within the discretion of the trial court, "the initial determination of whether a particular asset is marital or separate property is a question of law, subject to plenary review on appeal" (*DeJesus v DeJesus,* 90 NY2d 643, 647 [1997]).

Domestic Relations Law § 236 defines "marital property" as "all property acquired by either or both spouses *during the marriage* and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the

form in which title is held" (Domestic Relations Law § 236 [B] [1] [c] [emphasis supplied]), and the definition of marital property includes a "wide range" of tangible and intangible interests (*DeJesus*, 90 NY2d at 647). It is telling that the Legislature chose to initially categorize all property, of whatever nature, acquired after parties marry as marital property. As we have repeatedly emphasized, the Equitable Distribution Law "recognizes that spouses have an equitable claim to things of value arising out of the marital relationship and classifies them as subject to distribution by focusing on the marital status of the parties at the time of acquisition" (*O'Brien v O'Brien*, 66 NY2d 576, 583 [1985]). This marital property designation is in keeping with the fundamental purpose of the Equitable Distribution Law—the recognition of marriage as an economic partnership (*see* Governor's Approval Mem, L 1980, ch 281, reprinted in 1980 McKinney's Session Laws of NY, at 1863), in which "both parties contribute as spouse, parent, wage earner or homemaker" (*O'Brien*, 66 NY2d at 585).

The Legislature did provide for several exceptions to this general classification. Section 236 specifies that marital property does not include "separate property" and the statute sets forth four categories of property that constitute separate property:

> "(1) property acquired before marriage or property acquired by bequest, devise, or descent, or gift from a party other than the spouse;

> "(2) compensation for personal injuries;

> "(3) property acquired in exchange for or the increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse;

> "(4) property described as separate property by written agreement of the parties pursuant to subdivision three of this part" (Domestic Relations Law § 236 [B] [1] [d]).

When the Legislature enacted Domestic Relations Law § 236, it sought "to recognize the direct and indirect contributions of each spouse" (*Hartog v Hartog*, 85 NY2d 36, 47 [1995], citing Governor's Approval Mem, L 1980, ch 281, and Assembly Mem, 1980 NY Legis Ann, at 129-130). Hence, we have stressed that marital property should be "construed broadly in order to give effect to the 'economic partnership' concept of the marriage

relationship" (*Price v Price*, 69 NY2d 8, 15 [1986] [emphasis omitted]). By contrast, separate property—denoted as an exception to marital property—should be construed "narrowly" (*id.* [emphasis omitted]; *see Majauskas v Majauskas*, 61 NY2d 481, 489 [1984]). The structure of section 236 therefore creates a statutory presumption that "all property, unless clearly separate, is deemed marital property" and the burden rests with the titled spouse to rebut that presumption (*DeJesus*, 90 NY2d at 652).

With these principles in mind, we turn to the unique facts presented in this case.

## II.

Husband and wife, who are 60 and 69 years old, respectively, were married in 1970 and they have a son who was born in 1973. In 1978, the parties decided to purchase a home on the Upper West Side of Manhattan, selecting a five-story townhouse with 10 apartments and a basement. Wife agreed to the acquisition of the townhouse only if husband consented to certain preconditions because she believed that working outside the home and caring for their son, together with maintaining the townhouse, would be too burdensome. Because of wife's reticence, husband decided to purchase the townhouse with his mother's assistance.

Husband paid $130,000 for the townhouse, making a $30,000 down payment. The down payment came from funds husband received from his grandparents—half in lieu of a bequest and half on loan, which his mother agreed to repay. The balance of the purchase price was paid through two mortgages held jointly by husband and his mother. Husband took title solely in his name but later conveyed a one-half interest in the building to his mother. From 1982 to 2001, husband and his mother managed the townhouse as a formal partnership. They deposited rent proceeds into a partnership bank account and made mortgage payments from that account. But the partnership bank account was not used exclusively for the building's income and expenses; husband acknowledges that he commingled marital funds in the account.

In September 1978, husband and wife moved into the townhouse, initially residing in apartment 2 and, in 1979, the couple converted the basement into an apartment where they lived together for five months until wife became ill and moved into apartment 3. In 1983, after apartment 3 was burglarized, wife

relocated to apartment 2. Husband remained in the basement apartment and the couple shared occasional meals until 1997. Husband paid rent to the partnership for the basement apartment until 2002; he used his income from employment to make rental payments. Wife also paid rent using her wages while she was living in apartment 3. Husband's mother and stepfather resided in the building as well and paid rent for three apartments that they combined into a single residence. The remaining apartments were leased to various tenants. Husband and wife were continuously employed outside of the home, although they each took periods of parental leave to care for their son. It is not disputed that the couple shared child care expenses and responsibilities as parents.

## III.

Husband commenced this divorce action in February 2005 and Supreme Court referred the matter to a Special Referee. After a hearing on issues of equitable distribution, the Referee found that both parties contributed to the long-term marriage, their son's upbringing and the townhouse. The Referee recommended that husband's one-half interest in the townhouse be classified as marital property, less the $30,000 down payment, which the Referee deemed as husband's separate property because those funds had been received from husband's grandparents. He also found that husband's one-half interest in the partnership bank account was marital property. The Referee awarded wife 35% of the value of all marital assets because he concluded that wife had made direct and indirect contributions to the townhouse, including services as a spouse and mother.[1] Supreme Court confirmed the Referee's report and directed entry of a judgment of divorce. Upon husband's failure to pay wife her distributive award, Supreme Court entered a money judgment in wife's favor.

---

**1.** Included in his findings, the Special Referee determined that wife decorated the basement apartment, purchasing a carpet, a Formica countertop, couches, a linen closet, bathroom cabinets, a chandelier, curtains, and rugs. She installed a door in the basement apartment, wallpapered the bathroom and paid for flooring and a mirror for the foyer outside the apartment. Wife also helped with the townhouse's day-to-day maintenance. She cleaned the basement apartment and purchased the vacuum used to clean the lobby. Wife cleaned the mailbox vestibule, swept the interior and exterior steps, periodically cleaned the sidewalk, raked and bagged leaves in the backyard and planted a garden. She also cleaned lobby windows and washed the curtains, polished the lobby mirror and, during times when husband was away, disposed of the townhouse's refuse.

The Appellate Division, with two Justices dissenting, affirmed (65 AD3d 297 [1st Dept 2009]). The court held that husband's interest in the townhouse, less the $30,000 down payment, was properly categorized as marital property subject to equitable distribution. The majority emphasized that husband purchased the townhouse during the parties' marriage, that the couple continuously lived in the townhouse and raised their son in the home, and that wife made direct and indirect contributions to the upkeep of the townhouse. Rejecting husband's assertion that his interest in the townhouse should be viewed as separate property, the court explained that "[t]he fact that the marital residence can also be used to generate income . . . does not therefore reclassify marital property into separate property" (*id.* at 304).[2] The two dissenting Justices disagreed and concluded that husband rebutted the statutory presumption by showing that the townhouse, purchased with funds that were separate property, remained separate property and that wife failed to establish that any appreciation in the townhouse's value was caused by her direct or indirect contributions (*see id.* at 305 [McGuire, J., dissenting]). This appeal ensued.

## IV.

█ Husband argues that his one-half interest in the townhouse is separate property because he owns and manages the building with his mother and because wife did not contribute to its purchase or its appreciation in value. We disagree and conclude that the value of husband's one-half interest in the townhouse is marital property subject to equitable distribution.

This case involves the application of the well-settled statutory presumption that all property acquired by either spouse during the marriage, unless clearly separate, is deemed marital property (*see DeJesus*, 90 NY2d at 652). Here, husband purchased the townhouse in 1978, approximately eight years into the marriage, and therefore, on the date of acquisition, the presumption of marital property arose. Indeed, New York courts have long treated a marital residence that was purchased after the marriage as marital property subject to equitable distribution (*see e.g. Murphy v Murphy*, 4 AD3d 460, 461 [2d Dept 2004], *lv denied* 3 NY3d 612 [2004]; *Judson v Judson*, 255 AD2d 656,

---

2. The majority appears to have concluded that husband failed to rebut the statutory presumption that property acquired during the marriage is marital property, although the court's opinion does not explicitly state its holding in those terms.

657 [3d Dept 1998]; *see also Juhasz v Juhasz*, 59 AD3d 1023, 1024 [4th Dept 2009], *lv dismissed* 12 NY3d 848 [2009]; *Heine v Heine*, 176 AD2d 77, 84 [1st Dept 1992], *lv denied* 80 NY2d 753 [1992]). Even where one spouse contributed monies derived from separate property toward the acquisition of the marital residence, this has not precluded its classification as marital property where the other spouse made economic or other contributions to the residence and the marriage; the contributing spouse generally has received a credit for that contribution (*see e.g. Juhasz*, 59 AD3d at 1024; *Murphy*, 4 AD3d at 461; *Judson*, 255 AD2d at 657; *Heine*, 176 AD2d at 84).

For example, in *Heine*, the parties purchased a townhouse containing several apartments during their marriage. The husband used separate property to meet the down payment expense and the parties secured two mortgages to pay the balance of the purchase price; however, title was placed solely in the husband's name. The couple lived in an apartment in the townhouse and at least one of the units was always rented to a tenant. The wife was involved in several renovations to the building and she undertook primary care of the family's domestic and social needs. The Appellate Division credited the husband with the amount of the down payment, designating it as separate property (*see* 176 AD2d at 84). Nevertheless, the court held that husband was not entitled to the appreciation in value of his separate property contribution because that appreciation was not attributable to the down payment but to market forces, renovations and mortgage payments paid for with marital funds (*see id.*). Thus, the court viewed the townhouse, less the husband's initial contribution, as marital property subject to distribution between the parties (*see id.; see also Bartha v Bartha*, 15 AD3d 111, 115-117 [1st Dept 2005]).

Here, the property was purchased eight years into the parties' marriage with the intent that it would be used as the marital residence where the parties would live and raise their son. In fact, that is precisely what occurred—the parties resided in the home with their son and other family members for nearly 30 years. Thus, the statutory presumption that a residence acquired during the marriage is marital property clearly applies in this case.

Once the statutory presumption was triggered, the burden shifted to husband to rebut that presumption (*see DeJesus*, 90 NY2d at 652). Husband relies on the fact that he used monies derived from separate property—specifically, the $30,000 down

payment—to acquire the townhouse.[3] But the townhouse was not "acquired in exchange for" the $30,000 down payment (Domestic Relations Law § 236 [B] [1] [d] [3]). Instead, husband's $30,000 separate property contribution covered only a fraction of the purchase price. While the down payment facilitated the acquisition, the use of a "separate property" down payment does not, in and of itself, establish the property's character as separate property (see e.g. Juhasz, 59 AD3d at 1024; Murphy, 4 AD3d at 461; Judson, 255 AD2d at 657; Heine, 176 AD2d at 84).

The remaining $100,000 of the purchase price was paid through two mortgages and, despite husband's claim that he made mortgage payments solely from rental proceeds, he failed to substantiate that allegation. Husband testified that he commingled marital assets in the partnership bank account from which mortgage payments were made. Specifically, he acknowledged that he would sometimes deposit his paychecks—which were marital property—into the account. Funds from other sources of marital income were also placed into the account, such as husband's earnings from his tax preparation and video businesses and wife's paychecks. The fact that husband would later transfer funds or give cash to wife does not alter the commingled nature of the funds. Finally, both husband and wife paid rent to the partnership using income from their outside endeavors, which was a partial source of the mortgage payments. Husband therefore failed to establish that the mortgages, which were used to pay the majority of the townhouse's purchase price, were paid using monies derived exclusively from separate property, much less that all of the expenses associated with the property were covered by segregated funds.

There is no single template that directs how courts are to distribute a marital asset that was acquired, in part or in whole, with separate property funds. In these situations, courts have usually given the spouse who made the separate property contribution a credit for such payment before determining how to equitably distribute the remaining value of the asset (see e.g.

---

3. Wife argues that husband failed to prove that the $30,000 down payment was separate property because he could not produce cancelled checks showing that the money was a gift from his grandparents. Wife did not cross appeal to this Court or seek a modification of the Appellate Division order affirming Supreme Court's classification of the down payment as separate property. In any event, husband testified that he received the funds from his grandparents and his inability to produce the cancelled checks did not preclude a finding that the money was a gift (see e.g. Chiotti v Chiotti, 12 AD3d 995, 996 [3d Dept 2004]).

*Zurner v Zurner*, 213 AD2d 906, 908 [3d Dept 1995], *lv denied* 87 NY2d 802 [1995]; *Burns v Burns*, 193 AD2d 1104, 1106 [4th Dept 1993], *mod on other grounds* 84 NY2d 369 [1994]). In distributing any appreciation in value, courts may consider any of the factors listed in Domestic Relations Law § 236 (B) (5) (d) or any other relevant considerations (*see e.g. Butler v Butler*, 171 AD2d 89, 93-94 [2d Dept 1991]; *Woodson v Woodson*, 178 AD2d 642, 642-643 [2d Dept 1991]), including the respective contributions of each spouse and the effect of market forces.

In this case, the courts below properly considered the spectrum and quantity of contributions made by each spouse to the management and maintenance of the townhouse and the extent to which market factors enhanced the value of the property.[4] Under these circumstances, we decline to disturb the determination below that husband failed to rebut the statutory presumption that his interest in the townhouse is marital property subject to equitable distribution and that wife was entitled to 35% of husband's interest in that asset.

In reaching this conclusion, we emphasize that husband purchased the townhouse eight years into the 35-year marriage and that the family maintained their living arrangement since 1978. It is not for the courts to dictate what type of lifestyle a "normal" marriage should reflect or how married couples should structure their marital relationships. That husband and wife in this case have maintained separate apartments in the building does not change the character of the property from marital to separate, especially since they both made economic and noneconomic contributions to their marriage and the upbringing of their son (*see e.g. Iwanow v Iwanow*, 39 AD3d 471, 475 [2d Dept 2007]; *see also Fagan v Fagan*, 2 AD3d 394, 395 [2d Dept 2003]; *Greenwald v Greenwald*, 164 AD2d 706, 713-714 [1st Dept 1991], *lv denied* 78 NY2d 855 [1991]). Surely, many married couples sleep in different bedrooms for a variety of reasons and such arrangements do not affect the "marital property" status of their homes if they divorce. Likewise, the fact that husband took title to his one-half interest in the townhouse in his name alone is irrelevant under the statute's express language (*see* Domestic Relations Law § 236 [B] [1] [c]), nor does the fact that husband acquired title with his mother interfere with the marital character of his interest in the property (*see e.g. Bartha*, 15 AD3d at 115). Finally, that portions of

---

4. At the time of trial, the townhouse was valued at $2,625,000.

the townhouse were used as an income-generating business does not transform the building into separate property (see e.g. Heine, 176 AD2d at 84). Wife's lack of an initial monetary investment and involvement in the management activities pertaining to the townhouse do not preclude a holding that husband's interest in the building is marital property. These were factors properly considered by the trial court in determining the extent of wife's distributive award (see Domestic Relations Law § 236 [B] [5] [d]).

We part ways with the dissent at the initial stage of this analysis. The dissent fails to recognize the statutory presumption that property acquired during a marriage is marital property; instead, the dissent begins with the assumption that the building was separate property at the time of its acquisition. As explained above, we do not view husband's interest in the townhouse as property "acquired in exchange for" his separate property contribution toward the down payment. Under the dissent's analysis, any time a married couple purchases a marital residence using "separate" funds (e.g., an inheritance or monetary gift from a parent) contributed by one spouse towards the down payment, the entirety of the marital home would be classified as separate property. This approach is not consistent with relevant precedent, does not heed the Domestic Relations Law's statutory presumption in favor of marital property and is contrary to the very purpose underlying the statute in recognition of an "economic partnership."

V.

■ Next, husband claims that his one-half interest in the partnership bank account is separate property because the account was created solely to manage funds relating to the townhouse. But, as previously discussed, husband commingled marital assets in the partnership bank account and he could not sufficiently delineate any of the funds in the account as separate property (see e.g. McManus v McManus, 298 AD2d 189 [1st Dept 2002]). We agree with the courts below that husband's interest in the partnership bank account is marital property that should be allocated between the parties.

VI.

■ Finally, husband challenges the trial court's distribution of the marital property, arguing that the court abused its discretion by awarding wife 35% of the value of the marital assets. We disagree.

In recognizing marriage as an economic partnership, Domestic Relations Law § 236 mandates that the equitable distribution of marital assets be based on the circumstances of the particular case and directs the courts to consider a number of statutory factors. These factors encompass the income and property of each party at the time of marriage and at the time of commencement of the divorce action, the duration of the marriage, the age and health of the parties, the extent of any maintenance award and the nontitled spouse's direct or indirect contributions to the marriage, including "services as a spouse, parent, wage earner and homemaker" (Domestic Relations Law § 236 [B] [5] [d]). Absent an abuse of discretion, this Court may not disturb the trial court's distributive award (*see Holterman v Holterman*, 3 NY3d 1, 8 [2004]).

Here, Supreme Court issued a comprehensive decision addressing all relevant factors, including that husband and wife were married for 35 years; that both maintained employment and made economic and noneconomic contributions to the marriage, their son and the townhouse; that they had equal parenting responsibilities; that wife did not invest in the purchase of the townhouse; and that the couple maintained separate units in the building for approximately 28 years. In light of these considerations, particularly the length of the marriage, the age of the parties and wife's contributions to the marriage, we cannot conclude that Supreme Court abused its discretion in awarding wife 35% of the value of husband's half interest in the townhouse and other marital assets.

Accordingly, the Appellate Division order should be affirmed, with costs.

SMITH, J. (dissenting). The decisions below and the majority opinion here rest on different grounds, both indefensible.

The governing statute says that "separate property" includes "property acquired in exchange for or the increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse" (Domestic Relations Law § 236 [B] [1] [d] [3]). I think it clear, and the courts below seem to have assumed, that the husband's interest in this townhouse was acquired "in exchange for . . . separate property," and was therefore separate property at the time it was acquired. That interest grew in value during the next three decades, and the main issue as I see it is whether, and to what extent, the wife's "contributions or efforts" justify

treating the "increase in value of separate property" as marital property. The courts below held 100% of the appreciation to be marital—a conclusion that I find to be completely unjustified.

The majority affirms the decisions below on a different rationale. It does not rely on the statutory exception to the rule that appreciation in separate property is separate property, and does not assert that the wife's "contributions or efforts" played any part in that appreciation. Rather, it finds that the property was not separate in the first place. It was, the majority says, not "acquired in exchange for . . . separate property" because, according to the majority, some part of the mortgages used to acquire the townhouse may have been repaid with marital funds. This theory has many flaws, but the most obvious is that there is no evidence in this record, and neither court below found, that a penny of marital funds went into repaying the mortgages: The uncontradicted proof is that they were repaid entirely from rental proceeds. Thus the majority's rationale seems to me to be an even weaker one than that of the courts below.

## I

While the opinions below contain some confusing language, I think the basis for them is reasonably clear; Supreme Court and the Appellate Division majority treated the husband's interest in the townhouse as having been separate property initially, and found that the wife's contributions to the increase in value of that interest were such that all of the appreciation should be classed as marital property. It is true that both Supreme Court and the Appellate Division referred to the husband's interest itself—not just the appreciation—as marital property, but this seems to be simply a misdescription. Both courts in fact included only the appreciation in marital property, excluding the $30,000 down payment;* and the opinions below dwell on, and treat as dispositive, what the Special Referee called the wife's "countless contributions to the building." I see nothing to support the majority's surmise that the Appellate Division's reasoning was the same as the majority's here (see majority op at 165 n 2).

I therefore begin by examining the statutory language that I think was decisive below: "[t]he term separate property shall

---

* The $30,000 figure seems to be an error in the husband's favor committed by the courts below. $30,000 was the amount paid down to purchase the entire townhouse. Since the husband retained only a half interest in it, the amount of the offset against his interest should, on the theory of the courts below, be $15,000.

mean . . . the increase in value of separate property, *except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse.*" (Domestic Relations Law § 236 [B] [1] [d] [3].) Read carefully, the italicized words may be puzzling. "[T]o the extent that" and "in part" seem contradictory: Is the appreciation marital only "to the extent" that the other spouse contributes to it, or is it wholly marital if the other spouse contributes even "in part"? I think this riddle can be answered by considering an important premise of the law of equitable distribution: that marriage is an economic partnership, in which both spouses may contribute to the wealth accumulated during the marriage, either through direct efforts to earn money or indirect efforts as a parent and homemaker (*see Price v Price,* 69 NY2d 8, 13-15 [1986]). The statutory words "in part" refer to the possibility that the partnership of which the untitled spouse is "part" may contribute to the appreciation; "to the extent" that it does so, the resulting appreciation will be deemed marital, and the "part" of that marital appreciation due to the untitled spouse's efforts will be recognized when the marital property is divided.

Thus, when dealing with the appreciation in separate property, the statute assigns two tasks to a court: first, to figure out the "extent" to which appreciation results from the "contributions or efforts" of the untitled spouse, either solely or as a member of the marital partnership, and to include the appreciation in marital property to that extent; and secondly, to decide what "part" of that marital property the untitled spouse should receive. Here, the courts below classified 100% of the appreciation in the husband's interest in the townhouse as marital property, and then divided the marital property 65% to the husband and 35% to the wife. They thus implicitly found that 100% of the appreciation was attributable either to the wife's efforts or to the efforts of the economic partnership of which she and her husband were members; and that the 65-35 split is a reasonable reflection of the ratio of the parties' contributions. I do not find it necessary to examine the second of these findings, because I am satisfied that the first is without record support.

As we held in *Price,* the "contributions or efforts" referred to in the statute may be of two kinds: those that directly enhance the value of an asset, or "indirect contributions" as homemaker and parent (69 NY2d at 12-13). Only the first kind of contributions and efforts—the direct kind—is involved in this case. This is not a case like *Price,* in which the wife gave up outside

employment when her first child was born, devoted herself thereafter to bringing up children and taking care of the home, and "attended conventions with her husband and assisted him as hostess at various business-related social events" (*id.* at 12). Here, the parties lived in separate apartments for most of the marriage; both continued in full-time employment, though she took a maternity leave and he took a paternity leave; and both spent roughly equal time on parental duties. Neither party should be penalized for this, of course; the Appellate Division majority was quite right in saying that it is not for courts "to dictate what a 'normal' marriage should be" (*Fields v Fields*, 65 AD3d 297, 304 [2009]). I simply note that, under the statute as we interpreted it in *Price*, the wife's indirect contributions and efforts as homemaker and parent would, if they had contributed to the appreciation of the property, be entitled to recognition; but there is no evidence that they did.

There is some evidence, relied on heavily by the majority in the Appellate Division, that the wife made direct contributions to the value of the townhouse. I quote the Appellate Division's summary:

> "The wife purchased some furniture for apartment 1 and 'occasionally' swept and vacuumed the hall in front of the apartment entrance. She testified that she would clean up the lobby during renovations. She also purchased a $600 vacuum cleaner to clean the lobby three times a week, cleaned the mailbox vestibule, swept the interior and exterior steps, used bleach to clean dog excrement from the sidewalk, and raked leaves from a maple tree in the backyard. In the summers, when the husband would go to France to spend time with his mother, the wife took responsibility for disposing of the building's refuse. She washed lobby curtains, cleaned lobby windows and polished the lobby mirror. She also decorated apartment 1, planted and maintained the backyard, and bought patio furniture.

> "In addition to these services, the wife purchased a carpet, and a $500 Formica countertop for the marital apartment, as well as paying $700 for flooring in the foyer. She paid $400 for a foyer mirror, and paid for couches, a basement door installation, linen closet, bathroom cabinets and a chandelier." (*Id.* at 299-300.)

This is the evidence on which the courts below implicitly found *all* of the appreciation in the husband's interest in the townhouse—from $30,000 (as they valued it) in 1978 to $1,158,000 at the time of trial in 2006—to be attributable to the parties' joint or to the wife's sole efforts. With all the deference that is due both to affirmed findings of fact and to the established presumption that, in cases of doubt, property should be found to be marital (*Price*, 69 NY2d at 15), this finding cannot be sustained. No doubt well-cleaned lobbies, well-kept backyards and attractive furnishings can enhance the value of a building, but they do not cause a Manhattan real estate holding to increase forty-fold in value over 30 years. What does that, obviously, is the real estate market. A court-appointed expert—the only valuation expert to testify—confirmed this. He testified that "the greatest increase in value" came from "market forces." He added that another contributing factor was renovations that had been done in the building—renovations with which the wife had little, if anything, to do.

The record here simply does not support a finding that 100%—or any large part—of the increase in the value of the husband's interest in the real property was "due in part to the contributions or efforts" of the wife. For that reason, the Appellate Division's award to the wife of 35% of the value of that interest should be reversed.

## II

The majority does not try to defend the conclusion that the appreciation in the husband's interest in the townhouse was an "increase in value of separate property" includable in marital property because of the wife's "contributions or efforts" (Domestic Relations Law § 236 [B] [1] [d] [3]). Rather, the majority says that the interest in the townhouse was not separate property at all because it was "property acquired . . . during the marriage" (Domestic Relations Law § 236 [B] [1] [c]). At first blush, this seems an impossible conclusion, because the statute also says that "[m]arital property shall not include separate property as hereinafter defined" (*id.*), and goes on to define "separate property" to include "property acquired in exchange for . . . separate property" (Domestic Relations Law § 236 [B] [1] [d] [3]). As the majority acknowledges (majority op at 166-167), all of the money the husband put into the townhouse in 1978 was separate property. It is thus indisputable that the interest in the townhouse was separate property when it was first acquired.

But, as the majority notes, most of the money used to purchase the property was borrowed on the security of mortgages; the majority suggests that some part of the mortgages may later have been repaid with marital funds. The majority says that the husband "failed to substantiate" his claim "that he made mortgage payments solely from rental proceeds" (majority op at 167). If indeed the mortgages were paid back in part with marital funds, I agree that that would make the interest in the townhouse, in part, marital property. The majority ignores the distinction between "in part" and "in whole," but that error is not significant, because the only possible finding on this record is that mortgages were paid not from marital property, but from rental proceeds.

The husband's testimony on this point was not equivocal:

"Q And how did you pay these [original] mortgages?

"A Through the rents they collected from the building. . . .

"Q And the [subsequent] mortgage . . . , how was that being paid?

"A Same way."

The wife, having had discovery of the husband's financial records, offered nothing to contradict this testimony. Nor did either of the courts below reject it; no opinion below discusses it. The opinions below proceed on the assumption that the mortgages were indeed, as the husband said, paid out of the rents.

But the majority finds scraps of evidence in the record that it says support a contrary conclusion. It says the husband "acknowledged that he would sometimes deposit his paychecks . . . into the account" from which the mortgage payments were made (majority op at 167). But what he actually said was: "I occasionally put my paychecks *so I could pay the rent*" (emphasis added). The fact that the husband and the wife paid their rent with marital property, and that the mortgages were paid out of the rents, cannot support a finding that marital property was being used to reduce the husband's mortgage obligation—not, at least, if the rent payments reflected the fair rental value of the apartments rented. There is no evidence that the husband's (or the wife's) rental obligation was inflated, so as effectively to divert marital property into the separately owned building. It is at least as likely that the husband, in renting apartments to himself and his wife, charged a below-market rent, thus enlarging the marital estate.

The other evidence on which the majority relies is to the effect that some money other than rental payments occasionally went through the bank account from which the mortgages were paid. But the husband testified in substance that these transactions (to the extent that they involved arguably marital funds) were trivial, and again the wife produced no evidence to contradict his testimony. Thus he testified that the account was used as a conduit for payments for a "block guard fund"—apparently payments to a security guard hired by the block association—because the amounts involved did not justify spending $40 a month to maintain a separate account. He also used the account for a "school fund" totaling "a few hundred dollars." There is no evidence that any money from the husband's tax preparation and video business was put into the account before 2004. There is no evidence at all—the wife never even claimed—that any of the marital funds put into the account were diverted to mortgage payments. There is no evidence, and no claim, that the mortgage payments ever exceeded the rents received from the building.

In short, when the record is examined, it is easy to see why the majority's theory that marital funds were used to pay the mortgage was not embraced by the courts below: the record is quite clear that no such funds were ever used that way.

### III

The facts that the majority discusses are not limited to those made relevant by the statute—i.e., whether the husband's interest in the townhouse was "property acquired in exchange for . . . separate property" or the extent to which the appreciation in the townhouse was "due in part to the contributions or efforts" of the wife (Domestic Relations Law § 236 [B] [1] [c], [d] [3]). The majority gives great weight to the fact that the husband and wife lived in the townhouse—a fact whose relevance, on the face of the statute, is not apparent. The majority stresses that "the property was purchased . . . with the intent that it would be used as the marital residence where the parties would live and raise their son" and that "that is precisely what occurred" (majority op at 166). The majority speaks of the "statutory presumption that a *residence* acquired during the marriage is marital property" (*id*. [emphasis added])—but the statutory presumption applies to all assets, not just residences. Indeed, the majority seems horrified by the idea that "any time a married couple purchases a marital residence

using 'separate' funds . . . the entirety of the marital home would be classified as separate property" (majority op at 169)—though that is plainly what the statute says.

The majority seems to think it self-evident that, when a married couple buys a home, whether with separate or marital funds, any later increase in value of that home—whether due to the parties' efforts, market forces or something else—should be shared between the parties. I see some intuitive appeal in that rule, but the Legislature quite clearly did not enact it. The statute, right or wrong, treats residences and other property just the same. I think it inappropriate for us simply to engraft a special rule for residences onto the statute—if indeed that is what the majority is doing.

But even assuming that a "marital residence" has special status—that is, assuming it to be the law that the parties should share in the appreciation of a marital residence, even when the residence was acquired with separate property and the appreciation is due to market forces—it seems absurd to apply that rule to a case like this. The "marital residence" in this case was not the 10-apartment townhouse; it was, for a relatively brief period of time, a rented apartment in that townhouse in which the parties lived together. To suggest that when parties live in an apartment the whole apartment building, if separately acquired by one of them, takes on some special "marital residence" status is to open the door to enormous uncertainty and potential abuse.

## IV

The Appellate Division majority, like the majority here, emphasized facts having no relevance under the governing statute to the marital-separate property issue. The facts the Appellate Division stressed may be roughly put under the heading of "equities." That is evident from the opening words of the Appellate Division's majority opinion: "In this action for divorce, plaintiff husband seeks to divest 69-year-old defendant wife . . . ." (65 AD3d at 298.)

It is indeed easy to sympathize with the wife's plight. She is a retired school teacher. Her husband, nine years younger than she, decided after a 35-year marriage that he wanted to marry another woman. The husband is the wealthier of the parties. These facts might have supported an award of maintenance, which the courts below did not make. They are supposed to be totally irrelevant to an award of equitable distribution.

I am not naive enough to think it possible that considerations like these will never influence the outcome of cases, even cases

to which they should not be relevant. But I think it is our Court's role to hold lower courts in check when they find highly inventive ways of reaching what seem desirable results—not to find even more inventive ways of affirming those results. When one spouse can be awarded 35% of the other's valuable asset on a record like this, it is very hard to predict how any equitable distribution dispute will come out—except that the more sympathetic party will usually win. The result is a marked lack of predictability, and the sending of a message that the rules written in the statute books will not be followed. That is bad for litigants and bad for the law.

Chief Judge LIPPMAN and Judges CIPARICK, PIGOTT and JONES concur with Judge GRAFFEO; Judge SMITH dissents in a separate opinion in which Judge READ concurs.

Order affirmed, with costs.