[1 NYS3d 468]

Sherri Ceravolo, Respondent, v Michael DeSantis, Appellant.

Third Department, January 8, 2015

## APPEARANCES OF COUNSEL

*Friedman & Molinsek, PC*, Delmar (*Michael P. Friedman* of counsel), for appellant.

*Gordon, Tepper & DeCoursey, LLP*, Glenville (*Jenifer M. Wharton* of counsel), for respondent.

*Sharon Lee McNulty*, Albany, Attorney for the Child.

## OPINION OF THE COURT

STEIN, J.P.

The parties were married in July 1996 and have a daughter (born in 2001). Plaintiff (hereinafter the wife) commenced this action for divorce in June 2010. After a bench trial, Supreme Court determined, among other things, that the marital residence, which had been purchased by defendant (hereinafter the husband) prior to the marriage, was marital property and awarded the wife, among other things, half of its value. In addition, the court awarded the wife durational spousal support and child support. The husband now appeals.

■ Initially, we agree with the husband that Supreme Court erred in classifying the marital residence as marital property. " '[W]hether a particular asset is marital or separate property is a question of law' " (*Fields v Fields*, 15 NY3d 158, 161 [2010], quoting *DeJesus v DeJesus*, 90 NY2d 643, 647 [1997]; *accord Whitaker v Case*, 122 AD3d 1015, 1016 [2014]; *Owens v Owens*, 107 AD3d 1171, 1173 [2013]). Marital property is defined as "all property acquired by either or both spouses *during* the marriage" (Domestic Relations Law § 236 [B] [1] [c] [emphasis added]), while "property acquired *before* marriage" is separate property (Domestic Relations Law § 236 [B] [1] [d] [1] [emphasis added]). Here, the husband purchased the marital residence in January 1994—2½ years prior to the parties' marriage—paying $130,000 of his own funds and borrowing an additional $100,000 from his father, secured by a note and mortgage. Although the wife contributed $30,000 of her separate funds to the initial purchase of the residence, she did not attend the closing and the husband took title to the property in his name alone. The record reflects that the wife thereafter paid the mortgage for more than two years prior to the marriage, as well as after the parties were married through 2003, when a satisfaction of mortgage was issued, notwithstanding a principal balance remaining of approximately $52,000. Supreme Court determined that the wife's contributions transformed the residence from the husband's separate property into marital property, which was subject to equitable distribution. For the reasons that follow, we disagree.

Notably, the entire basis for the Equitable Distribution Law (Domestic Relations Law § 236 [B]) derives from the concept that marriage is an economic partnership and, therefore, that marital property should be divided equitably without regard to the title in which that property is held (*see Fields v Fields*, 15 NY3d at 162; *Price v Price*, 69 NY2d 8, 14-15 [1986]; Alan D. Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 236 Part B, C236B:4 at 72). However, "[t]he economic partnership created by marriage cannot exist until marriage has occurred. If non-marital cohabitants wish to form an economic partnership, they may do so; but the partnership can be created only by agreement, not by operation of law" (Alan D. Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Part 1, Domestic Relations Law § 236 Part B, C236B:4 at 75). Indeed, "the Equitable Distribution Law 'recognizes that spouses have an equitable claim to things of value arising out of the marital relationship and classifies them as subject to distribution *by focusing on the marital status of the parties at the time of acquisition*' " (*Fields v Fields*, 15 NY3d at 162, quoting *O'Brien v O'Brien*, 66 NY2d 576, 583 [1985] [emphasis added]). Accordingly, the Equitable Distribution Law does not purport to address financial transactions between persons prior to their marriage, which "cannot be considered to have been the product of the marital enterprise" (*Brennan v Brennan*, 103 AD2d 48, 52 [1984]).[1] Therefore, while Supreme Court's finding that the wife made certain substantial contributions of money and effort toward the acquisition and maintenance of the marital residence is amply supported by the record, the effect of such contributions by the wife—particularly those she made before the marriage—is not to transform the husband's premarital, separate property into marital property (*see generally Keil v*

---

1. For this same reason, equitable distribution does not afford the wife any remedy with respect to the $30,000 that she contributed towards the down payment of the house or the premarriage mortgage payments that she made. Nevertheless, a spouse who makes premarital contributions to an asset titled in the other spouse's name may have other avenues to protect his or her investment, such as a prenuptial or marital agreement (*see* Domestic Relations Law § 236 [B] [3]) or a transfer of title to reflect joint ownership. Alternatively, as the husband argues, after the breakdown of the marriage, the nontitled spouse could bring a claim for the imposition of a constructive trust and/or for unjust enrichment (*see generally Tyree v Henn*, 109 AD3d 906, 907 [2013]; *Kilkenny v Kilkenny*, 54 AD3d 816, 818 [2008]). However, no such claim was made here.

*Keil*, 85 AD3d 1233, 1235 [2011]; *Embury v Embury*, 49 AD3d 802, 804 [2008]; *Burgio v Burgio*, 278 AD2d 767, 769 [2000]).

The wife and the dissent rely on *Matwijczuk v Matwijczuk* (261 AD2d 784 [1999]) for the proposition that real property obtained prior to marriage can be transformed into marital property. In that case, we held—citing *Ciaffone v Ciaffone* (228 AD2d 949 [1996])²—that the use of marital funds, together with the nontitled spouse's efforts and contributions of separate funds toward the construction of the marital residence (which began before the marriage on land purchased by the titled spouse a few months earlier) "in furtherance of the marital partnership" were sufficient to transform the residence, including the land, into marital property (*Matwijczuk v Matwijczuk*, 261 AD2d at 786). To the extent that *Matwijczuk* and *Ciaffone* can be read as holding that separate property contributions made by a nontitled spouse toward the acquisition or improvement of premarital property can serve to transform such property into a marital asset, they should no longer be followed.

We note, however, that separate property contributions by a nontitled spouse could result in an appreciation of the value of the titled spouse's separate property during the marriage, which appreciation would be subject to equitable distribution (*see* Domestic Relations Law § 236 [B] [1] [d] [3]; *Keil v Keil*, 85 AD3d at 1235).³ Here, inasmuch as the wife failed to prove the value of the residence at the time the parties were married, the amount of the property's appreciation during the marriage—and, hence, the wife's equitable share thereof—cannot be ascertained (*see Burgio v Burgio*, 278 AD2d at 769), and no award may be made on this basis (*see Hartog v Hartog*, 85 NY2d 36, 46 [1995]; *Albanese v Albanese*, 69 AD3d 1005, 1006 [2010]; *Bonanno v Bonanno*, 57 AD3d 1260, 1261 [2008]; *Golub v Ganz*, 22 AD3d 919, 922-923 [2005]). Indeed, the wife

---

**2.** In *Ciaffone*, we determined that the parties' investment of marital funds to construct a two-family house on land purchased by the husband with his premarital funds rendered the property a marital asset subject to equitable distribution, with a credit given to the husband for the premarital funds that he used to purchase the land.

**3.** For example, in *Ryan v Ryan* (123 AD2d 679 [1986]), a decision relied upon by Supreme Court and the dissent, the marital residence was purchased by the husband 29 days before the marriage and the mortgage and other carrying charges were paid out of a joint account. In that case, the Second Department held that the wife was entitled to an equitable distribution of the value of the residence because she had substantially contributed to the acquisition thereof and its *appreciation in value* was due, in part, to her contributions and efforts (*id.* at 681).

conceded at oral argument that she was not seeking equitable distribution of the property's value based upon its appreciation.

The dissent's conclusion that our determination unduly emphasizes the fact that the husband took sole title to the property ignores that, while property acquired during the marriage is statutorily deemed marital "regardless of the form in which title is held" (Domestic Relations Law § 236 [B] [1] [c]), title is a critical consideration in identifying the nature of real property acquired before the marriage. Therefore, in our view, the circumstances surrounding the purchase of the residence and the parties' intent relative thereto are irrelevant to the legal classification of the residence as separate or marital property. Indeed, even the dissent apparently agrees that, at the time of the marriage, the residence was the husband's separate property (*see e.g. Owens v Owens*, 107 AD3d at 1173), as there would otherwise be no need for the dissent to deem it transformed into marital property thereafter.

We also disagree with the dissent's comparison of the circumstances here to the commingling of separate funds in a joint marital bank account (*see e.g. Judson v Judson*, 255 AD2d 656, 657 [1998]). To be sure, "separate property which is commingled with marital property or is subsequently titled in the joint names of the spouses is presumed to be marital property" (*Chiotti v Chiotti*, 12 AD3d 995, 996 [2004]; *see Gately v Gately*, 113 AD3d 1093, 1094 [2014], *lv dismissed* 23 NY3d 1048 [2014]; *see also Vertucci v Vertucci*, 103 AD3d 999, 1003 [2013]). Thus, commingling generally occurs when separate funds are deposited in a marital account through a deliberate act by the separate property holder—which is presumed to be a gift to the marriage—with the deposited funds thereby losing their character as separate property (*see Fehring v Fehring*, 58 AD3d 1061, 1062 [2009]; *Schwalb v Schwalb*, 50 AD3d 1206, 1209 [2008]; *Chiotti v Chiotti*, 12 AD3d at 996).[4] Here, however, the husband did not commingle his separate property or otherwise

---

4. It is difficult to conceive of a scenario in which real property, unlike liquid funds, could be commingled with marital property. Thus, we do not agree with the dissent that the wife's contributions and efforts with respect to the marital residence could be construed as the commingling of assets. Rather, as previously noted, such contributions would have been relevant either to the appreciation of the value of the residence subject to equitable distribution as explicitly set forth in the Domestic Relations Law or, as described herein, considered recoverable contributions toward the husband's separate indebtedness.

take any affirmative act—such as a conveyance to the parties, jointly—that could be perceived as a gift to the marriage so as to transform the residence into marital property (*see e.g. Myers v Myers*, 119 AD3d 1114, 1115 [2014]; *Alecca v Alecca*, 111 AD3d 1127, 1128 [2013]; *Campfield v Campfield*, 95 AD3d 1429, 1429 [2012], *lv dismissed* 20 NY3d 914 [2012], *lv denied* 21 NY3d 857 [2013]).

We agree, however, with the wife's alternative argument that she is entitled to recoup her equitable share of marital funds paid toward the mortgage. It is well settled that, in determining the "equitable distribution of marital property, a court has the authority to effectively recoup marital funds applied to the reduction of one party's separate indebtedness" (*Micha v Micha*, 213 AD2d 956, 957 [1995]; *see Biagiotti v Biagiotti*, 97 AD3d 941, 943 [2012]; *Bonanno v Bonanno*, 57 AD3d at 1261; *Burtchaell v Burtchaell*, 42 AD3d 783, 786 [2007]; *Lewis v Lewis*, 6 AD3d 837, 839 [2004]). Here, the wife testified that she paid the mortgage on the marital residence from the date of the marriage until a satisfaction of mortgage was issued. Although it is not evident from the record what funds were used to make these payments, it can be presumed that marital funds were used (*see Carr v Carr*, 291 AD2d 672, 676 [2002]). Thus, the wife is entitled to an equitable share of the marital funds that were used to pay the husband's separate indebtedness—the mortgage—during the marriage (*see Biagiotti v Biagiotti*, 97 AD3d at 943; *Lewis v Lewis*, 6 AD3d at 839; *Micha v Micha*, 213 AD2d at 958), and the matter should be remitted to Supreme Court to determine the wife's share thereof. Moreover, to the extent that Supreme Court's awards to the wife of equitable distribution and maintenance were based upon its erroneous finding that the marital residence constituted marital property and that the wife was entitled to 50% of its value, remittal should include reconsideration of such equitable distribution and maintenance awards (*see e.g. Cameron v Cameron*, 22 AD3d 911, 912-913 [2005]).

Next, the husband challenges Supreme Court's child support award as being based on excessive annual income of $132,000 imputed to himself and inadequate annual income of $20,000 imputed to the wife. A trial court may impute income to a party based on a number of factors, including past employment, future earning capacity and standard of living (*see Sadaghiani v Ghayoori*, 83 AD3d 1309, 1311-1312 [2011]; *Armstrong v Armstrong*, 72 AD3d 1409, 1413 [2010]; *Bean v Bean*,

53 AD3d 718, 722 [2008]). Here, the husband has a Bachelor's degree in fine arts and has been self-employed as a wholesale antiques dealer since 1982. The record shows that the business prospered during the marriage, but took a downward turn in 2008, with earnings declining from $190,000 in 2006 to $16,000 in 2009 and $15,000 in 2010. The husband argues that the court erred by imputing income based on the median income earned from 2000 through 2008 without regard to the post-2008 decline. The court, however, found that the husband's testimony as to his earning capacity was not credible, noting that he has continued to maintain a high standard of living without incurring additional debt. Notably, the husband has retained ownership of the antique business as his separate property, and the wife testified that the business engaged in a variety of cash transactions. Deferring to Supreme Court's credibility assessments, we discern no basis to disturb its determination as to the husband's income (*see Sadaghiani v Ghayoori*, 83 AD3d at 1312).

We reach a similar conclusion with respect to the imputation of income to the wife, who is currently unemployed. At the time of the marriage, the wife was gainfully employed as a fashion designer in New York City, earning $68,000 per year. She left that employment in 2005, when the parties decided to relocate to the City of Albany to raise their daughter. Since that time, the wife has had limited success as a real estate agent and in various part-time positions. Supreme Court opted to impute $20,000 of annual income to the wife based on her receipt of an offer to work at a retail store for $10 an hour, a position she declined. Notwithstanding the fact that the wife is an experienced fashion designer and capable of pursuing gainful employment, given her efforts to obtain comparable work in the Albany area, we cannot say that Supreme Court abused its discretion in defining her income for purposes of calculating child support.

Lynch, J. (concurring in part and dissenting in part). I respectfully dissent from so much of the majority's decision as classified the marital residence as separate property.

We certainly all agree that Domestic Relations Law § 236 defines marital property as "all property acquired by either or both spouses during the marriage" (Domestic Relations Law § 236 [B] [1] [c]), and that separate property includes "property acquired before marriage" (Domestic Relations Law § 236 [B]

[1] [d] [1]). The dispute here concerns the transformation of the residence from separate into marital property. The record shows that defendant (hereinafter the husband) acquired title to the property in January 1994 for the sum of $260,000. The husband paid $130,000 toward the acquisition and borrowed an additional $100,000 from his father, secured by a note and mortgage. Supreme Court credited the testimony of plaintiff (hereinafter the wife) that she contributed $30,000 towards the purchase price, but was unable to attend the closing due to work commitments in New York City. At the closing, the husband took title in his name alone. Significantly, the wife agreed to pay off the mortgage so as to equalize their contributions or, as described by the husband, since he "put down the lion's share of the money to purchase it . . . she would pay the mortgage." The wife made the mortgage payments for more than two years prior to the marriage and through 2003, when a satisfaction of mortgage was issued by the husband's mother, as representative of her husband's estate. At that time, the principal balance was released with the understanding that continued payments would be made to the daughter's college trust. Likening this scenario to that in *Ryan v Ryan* (123 AD2d 679 [1986]), Supreme Court determined that the residence was transformed from separate property into marital property. I agree. By his own account, the husband testified that it was only fair that the parties equally contribute to the purchase of the property since they both would live there. In my view, this financial arrangement, initiated upon the acquisition of the property and continuing after the parties were married, transformed this property into a marital asset (*see Matwijczuk v Matwijczuk*, 261 AD2d 784, 785-786 [1999]; *Ciaffone v Ciaffone*, 228 AD2d 949, 953 [1996]).

I also believe that the majority places undue emphasis on title, in disregard of the actual agreement between the parties to equally bear the financial burden to acquire this property. In a very real sense, the only factor to substantiate the husband's separate property claim is the fact that the deed was placed in his name. The fortuitous circumstance that the wife was unable to attend the actual closing, however, should really be of no moment, given that advance arrangements can routinely be made to include both purchasers' names on a deed regardless of attendance. No plausible explanation was provided for excluding the wife's name from the deed, except her testimony that the husband chose not to put her name on the deed because "that's just how it's done in his family."

This Court, in both *Matwijczuk v Matwijczuk* (*supra*) and *Ciaffone v Ciaffone* (*supra*), recognized that a nontitled spouse's premarital contributions to the development of a separate property asset can serve to transform that property from separate into marital property. The application of this principle is particularly appropriate here, where the wife made a significant financial contribution to acquire the asset in the first instance, when, according to her testimony, the parties were engaged and living together in New York City, and then paid the mortgage with her separate funds prior to marriage. That factual context readily distinguishes this case from the situation in *Burgio v Burgio* (278 AD2d 767 [2000]), cited by the majority, in which the husband acquired and improved the real property before the marriage utilizing his own funds, without any contribution by the wife.

Under the circumstances presented, the wife should not be relegated to the remedy of a constructive trust to recover her premarital financial contributions to the purchase of the property. Where, as here, marital funds were presumably utilized to pay down the mortgage note for a period of seven years after the marriage (*see Carr v Carr*, 291 AD2d 672, 676 [2002]), the situation is akin to the deposit of separate funds into a joint marital account, with the ongoing use of those funds for marital purposes transforming the funds into marital property (*see Judson v Judson*, 255 AD2d 656, 657 [1998]). To conclude, as the majority does, that the property retained its separate property status exalts title over the true equitable interests of the parties in this property—a consequence the Equitable Distribuiton Law was intended to prevent (*see O'Brien v O'Brien*, 66 NY2d 576, 584-585 [1985]). As such, I find no abuse of discretion in Supreme Court's award to the wife of $170,000, representing half of the stipulated value of the asset.

McCarthy and Garry, JJ., concur with Stein, J.P.; Lynch, J., concurs in part and dissents in part in a separate opinion.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as determined that the marital residence was marital property and directed equitable distribution thereof equally to the parties; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.