OPINION OF THE COURT
W. Dennis Duggan, J.
Are the ashes from the cremation of a 26-week-old stillborn fetus marital or separate property? The court holds that they *932 are separate property. This matter was submitted to the court as a motion for a default judgment of divorce. In the plaintiffs complaint, she alleged there were no children of the marriage and there was no property to be determined as being separate or marital. While that matter was pending, the defendant filed with the court an unsworn statement asserting that he wished to contest the matter to seek “half of [his] son’s ashes.” Given this discrepancy in the pleadings, this court, on its own motion, issued an order to show cause to each party for purposes of taking testimony on this issue.
Based on that testimony, the court finds that the ashes in dispute are not marital property and not subject to equitable distribution. The ashes constitute the separate property of the plaintiff.
Though it is not relevant to the holding of this case, the context of the dispute is relevant to put that holding in the proper perspective. The “child” in question was a stillborn male fetus that was miscarried in August 2012, at 26 weeks. The parties physically separated a few months after this.[1] The plaintiff testified that at the time of the separation, the defendant took the ashes and threatened to flush them down the toilet. She is willing to split the memorabilia from the hospital such as photographs and the footprints (which were not produced at the hearing) but she is not willing to share the ashes. The defendant countered that he had a bad year, losing his marriage, his job and three relatives. As a result, he made some stupid comments in anger but states he has no intention of desecrating the memory of his son by vandalizing the ashes. The record supports the plaintiff with respect to these circumstances.
On December 27, 2012, the plaintiff filed a family offense petition in this Family Court. In open court, on January 2, 2013, the defendant admitted to taking the ashes and to hiding the plaintiffs cell phone. In agreeing to a final order of protection for one year with stay-away provisions, the defendant agreed to return the ashes and the phone. On August 6, 2013, the defendant was convicted in Albany City Court of aggravated harassment in the second degree against the plaintiff and a two-year stay-away order of protection was issued against him.
Before addressing the law of marital property to be applied to this case, it will be helpful to review how the Public Health Law *933 treats miscarriages and stillbirths. Public Health Law § 4160 (1) provides that a
“[f]etal death is defined as death prior to the complete expulsion or extraction from its mother of a product of conception; the death is indicated by the fact that after such separation, the fetus does not breathe or show any other evidence of life such as beating of the heart, pulsation of the umbilical cord, or definite movement of voluntary muscles.”
In short, a fetal death produces the remains of any pregnancy that does not result in a live birth. A fetal death requires the issuance of a fetal death certificate pursuant to Public Health Law § 4160 (2) and, upon request, a certificate of stillbirth pursuant to Public Health Law § 4160-a. Pursuant to Public Health Law § 4160 (5), disclosure of the information filed pursuant to fetal death registrations “shall be limited to the mother [and] her lawful representative.” This would apparently exclude a putative father or husband, absent the mother’s consent.
A “stillbirth” is a sub-category of fetal deaths. Public Health Law § 4160-a (7) defines a “stillbirth” as the “unintended intrauterine death of a fetus that occurs after the clinical estimate of the twentieth week of gestation.” A certificate of stillbirth is issued to the “parents” upon their request and may include “the name given to the stillborn fetus” (id. § 4160-a [1], [4]). The burial or cremation of the remains of a stillbirth require a permit issued to a funeral director (Public Health Law § 4162). According to the mother, no certificate of stillbirth was requested and the defendant is not listed on any documents as a parent of the stillborn fetus. There are hospital documents which list the fetus as having been given the name Elijah.
A textual analysis of Domestic Relations Law § 236 does not supply a ready answer to the issue of whether the ashes of a stillborn fetus conceived and miscarried during the marriage constitutes marital or separate property. Domestic Relations Law § 236 (B) (1) (c) and (d), in relevant part, defines marital property as “all property [that is not otherwise defined as separate] acquired by either or both spouses during the marriage . . . , regardless of the form in which title is held.” Separate property, as far as it could be relevant to this matter, is defined as “property acquired before marriage” (id. § 236 [B] [1] [d] [1]).
The ashes are clearly property by any plain meaning of the word. They have a physical aspect separate from any other *934 person or thing and, not being otherwise abandoned, must be “owned” by the plaintiff, the defendant or both. On the other hand, a fetus, while still in a woman’s womb, would not be considered to be property. But fetal remains, once expelled or extracted from the mother’s body, would be. It is also clear that the fetal remains, when transmogrified to ashes, can also become marital property by the parties’ intent and behavior. The ashes are clearly not separate property by statutory definition because the plaintiff was both impregnated by the defendant and she miscarried during the marriage. In the context of a divorce action, all property owned by the husband and wife must be either marital or separate. Since Domestic Relations Law § 236 clearly excludes the ashes as being separate property, they must be marital property because there is no other alternative. That simplification, however, does not lead to the correct answer in this case.
The common legal principles that have been developed by case law to resolve difficult questions of property law within the context of a divorce action are singularly unhelpful in this case. The plaintiff clearly owned, prior to the marriage, the egg from which the fetus developed. On the other hand, the defendant impregnated the plaintiff with sperm he acquired after the marriage.[2] This would clearly be a comingling of each party’s property that each party intended to enhance into another human being. Obviously, once there was a live birth, a person is created and all notions of property ownership as between the parents with respect to the baby evaporate.[3] On the other hand, there is no way to characterize or to measure an enhanced value of a 26-week-old fetus that was produced by the joining of the mother’s egg and the father’s sperm, regardless of when each contribution was made. Even if there was, it is clear, at least in this *935 case, that all changes in the fertilized egg as it developed into a fetus are the results of the efforts of the plaintiff.[4]
As a general rule, property will be presumed to be marital (Fields v Fields, 15 NY3d 158 [2010]). On the other hand, separate property can be transmuted to marital property by the actions or intent of the titled spouse (Nidositko v Nidositko, 92 AD3d 653 [2012]). In this case, the record is not clear as to how the parents treated the ashes or who authorized the cremation of the fetal remains. Given the conclusion that the cremation ashes are not, by definition, separate property, the presumption and the only remaining alternative would call for a conclusion that the ashes are marital property subject to distribution. On the somewhat meager evidence in this case, the equities of the circumstances would command such a finding and a distribution of the ashes to the plaintiff. However, unless legislated otherwise, the public policy of this State would lead to a conclusion that fetal remains, in whatever form, are separate property. That public policy is found in the statutory and common law of reproductive rights in this state. That law gives to the woman full control over the progress and outcome of her pregnancy without veto power by a husband or putative father. The only restrictions on the woman are the interests of the state that can be imposed within the confines of the Roe v Wade trimester regime (410 US 113 [1973]). While a woman could clearly confer a property interest in fetal remains to a husband, unless that was clearly shown to be the case, the ashes of her stillbirth should be presumed to be her separate property.
In this case, the weight of the evidence leads to a conclusion that the plaintiff had no intent and took no actions to transmute her separate ownership rights of the ashes from the fetal remains to marital property so as to confer a property right in those ashes to the defendant.[5]

. The parties married on May 19, 2011 and physically separated on December 27, 2012. The miscarriage occurred on August 31, 2012. The divorce action was commenced on April 23, 2013.

. The general understanding is that the female of the human species possesses at birth all the eggs that will ever be available for reproduction. This a very simplified description of the process as only one mature ovum is produced during each menstrual period from an immature egg called an oocyte. The male of the species, on the other hand, produces sperm cells each day which mature over a period of about 90 days and, if then not ejaculated, are reabsorbed into the body. (See Cleveland Clinic, www.clevelandclinic.org.)

. Public Health Law § 4201 sets forth the priority rights of those persons who have control over a decedent’s remains. To a great degree, that statute codifies the common-law right of sepulcher. For a full discussion of this subject, see Lewis v Lloyd (40 Misc 3d 1223[A], 2013 NY Slip Op 51286[U] [Sup Ct, Kangs County 2013]) and Turner v Owens Funeral Home, Inc. (41 Misc 3d 444 [2013]). There are no comparative provisions with respect to the remains of fetal deaths.

. No evidence was offered by the defendant that he cared for the plaintiff during her pregnancy. Even if he had, he would have to show that those efforts enhanced the value of the fetus which would give him some equitable right to ownership of some portion of the ashes resulting from the cremation of that fetus. This is a concept for which the laws of equitable distribution in this State do not take cognizance.

. For a discussion of reproductive rights in the area of in vitro fertilization, see Kass v Kass (91 NY2d 554 [1998]).