Strohli v Strohli (2019 NY Slip Op 06012)





Strohli v Strohli


2019 NY Slip Op 06012


Decided on July 31, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 31, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
RUTH C. BALKIN
FRANCESCA E. CONNOLLY
LINDA CHRISTOPHER, JJ.


2016-02121
 (Index No. 1364/13)

[*1]Mark Strohli, appellant-respondent, 
v
Jessica Strohli, respondent-appellant.


Montalbano, Condon & Frank, P.C., New City, NY (Martin S. Butcher of counsel), for appellant-respondent.
Eric Ole Thorsen, New City, NY, for respondent-appellant.



DECISION & ORDER
In an action for a divorce and ancillary relief, the plaintiff appeals, and the defendant cross-appeals, from stated portions of a judgment of divorce of the Supreme Court, Rockland County (Victor J. Alfieri, Jr., J.), entered December 30, 2015. The judgment of divorce, insofar as appealed from, upon an amended decision of the same court dated April 1, 2015, made after a nonjury trial, inter alia, (1) failed to deduct the annual amount of the plaintiff's maintenance payments from the plaintiff's income in calculating his child support obligation, (2) failed to direct that the plaintiff's maintenance payments terminate as provided for in Domestic Relations Law § 236(B)(1)(a), (3), in effect, directed the plaintiff to pay 100% of the cost of maintaining health insurance for the parties' children, (4) failed to direct the defendant to pay her percentage share of unreimbursed medical expenses, camp expenses, and private school tuition for the parties'children, (5) failed to distribute marital personal property, (6) failed to award the plaintiff a credit for (a) marital funds withdrawn from the parties' joint checking account by the defendant at or around the date of the commencement of the action, and (b) certain credit card expenses incurred by the defendant during the trial, (7) directed that marital debt be paid in proportion to the parties' income, (8) awarded the defendant possession of the marital residence until the youngest child attained the age of 18, (9) failed to award the plaintiff a credit against maintenance and child support arrears for (a) payments made by the plaintiff pursuant to a purported pendente lite order and (b) payments made voluntarily by the plaintiff during the pendency of the action, (10) failed to direct the defendant to pay expenses related to damages to a vehicle leased by the plaintiff and used by the defendant, and (11) failed to find the defendant in contempt for violating the parental access provisions of the purported pendente lite order. The judgment of divorce, insofar as cross-appealed from, inter alia, (1) failed to award the defendant arrears under the purported pendente lite order, (2) awarded the defendant maintenance in the sum of only $1,000 per month to be paid for only six years and child support in the sum of only $2,495.25 per month based on income imputed to the plaintiff in the amount of only $86,064 per year, and income imputed to the defendant in the amount of $31,200 per year, (3) directed that the marital assets be divided equally between the parties, (4) failed to direct that the defendant receive a credit for mortgage and home equity line of credit payments made after the parties' divorce, (5) failed to affirmatively allow the defendant to sell the marital residence, before the parties' youngest child attains the age of 18, (6) failed to award the defendant a credit for marital funds allegedly used by the plaintiff to pay pendente lite obligations, and (7) failed to direct the plaintiff [*2]to maintain life insurance.
ORDERED that the appeal from so much of the judgment of divorce as (1) failed to award the plaintiff a credit against maintenance and child support arrears for (a) payments made by the plaintiff pursuant to the purported pendente lite order and (b) payments made voluntarily by the plaintiff during the pendency of the action, and (2) failed to find the defendant in contempt for violating the parental access provisions of the purported pendente lite order is dismissed, without costs or disbursements; and it is further,
ORDERED that the cross appeal from so much of the judgment of divorce as (1) failed to award the defendant arrears under the purported pendente lite order, and (2) failed to award the defendant a credit for marital funds allegedly used by the plaintiff to pay pendente lite obligations is dismissed, without costs or disbursements; and it is further,
ORDERED that the judgment of divorce is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting from the eighth decretal paragraph thereof the provision directing the plaintiff to pay 79% of camp expenses, and substituting therefor a provision directing the plaintiff to pay 79%, and the defendant to pay 21%, of reasonable camp expenses for the children, required as and for child care in order for the defendant to be employed, (2) by adding to the eleventh decretal paragraph thereof, after the words "plaintiff shall pay defendant taxable maintenance in the sum of $12,000 per year in installments of $1,000 per month commencing on the date of the filing of the complaint for a period of six years," the words "or until the death of either party or the defendant's remarriage, whichever shall occur sooner," (3) by deleting from the twelfth decretal paragraph thereof the words "the proceeds [of the sale of the marital residence], after all costs of sale, shall be divided equally between the parties," and substituting therefor the words "the proceeds of the sale of the marital residence shall be divided equally, after deducting all costs of sale and after awarding the defendant a credit for (a) 50% of the difference between the principal balance of the mortgage as of December 22, 2015, and the amount due at closing, and (b) 50% of the payments she makes on the home equity line of credit from December 22, 2015, until the closing of sale," (4) by deleting from the thirteenth decretal paragraph thereof the words "[u]ntil such time as the sale and closing [of the Monsey, Hillburn, and Hyde Park investment properties], the parties shall pay all taxes, upkeep and maintenance costs as relates to their share of the property as follows: plaintiff shall pay 60% and the defendant shall pay 40% in proportion to their income ratio," and
substituting therefor the words "until such time as the sale and closing of the Monsey and Hyde Park investment properties, the plaintiff shall pay 100% of the taxes, upkeep, and maintenance costs on the Monsey and Hyde Park investment properties, and the plaintiff shall receive a 50% credit from the proceeds of the sale of the Monsey and Hyde Park investment properties for the taxes and legitimate verified upkeep and maintenance costs paid by him; the defendant shall pay the taxes and legitimate verified upkeep and maintenance costs on the Hillburn investment property from the rental receipts, and any profit from the rental receipts shall be equally divided between the parties upon the sale of the Hillburn investment property," (5) by deleting from the fourteenth decretal paragraph thereof the words "all debts are presumed to be marital and shall be split by the parties in accordance with their respective incomes, with the plaintiff responsible for 79% and the defendant responsible for 21% of all outstanding debt," (6) by deleting the provision thereof, in effect, directing the plaintiff to pay 100% of the cost of maintaining health insurance for the parties' children, and substituting therefor a provision directing the plaintiff to pay 79% and the defendant to pay 21% of the cost of maintaining health insurance for the parties' children, (7) by adding a provision thereto directing the defendant to pay 21% of the private school tuition and 21% of the unreimbursed medical costs for the parties' children, (8) by adding a provision thereto directing the plaintiff to purchase life insurance naming the defendant as irrevocable beneficiary, in an amount sufficient to secure the plaintiff's maintenance and child support obligations, (9) by adding a provision thereto directing that, upon the defendant's consent, the parties may sell the marital residence before the parties' youngest child attains the age of 18, (10) by adding a provision thereto that the plaintiff is entitled to the following items of separate personal property: (a) silver items: three menorahs, six kiddush cups and matching plates, a large tray, a large fruit basket, a flower vase, and two single candlestick holders; and (b) the plaintiff's collections of baseball cards and comic books as they existed at the time of the commencement of the action, (11) by adding a provision thereto directing [*3]that the plaintiff is entitled to one-half of the family photographs, videos, and picture albums as they existed at the time of the commencement of the action, and (12) by adding a provision thereto awarding the plaintiff a credit in the amount of $19,400 for his 50% share of the marital funds that were withdrawn from the parties' joint checking account by the defendant, to be paid by the defendant from her share of the proceeds of the sale of the parties' real property; as so modified, the judgment of divorce is affirmed insofar as reviewed, without costs or disbursements.
The parties were married in 1992, and are the parents of five children, born in 1995, 1999, 2003, 2007, and 2010, respectively. This action for a divorce and ancillary relief was commenced in 2013. The plaintiff did not graduate high school, but obtained a real estate license when he was 18 that he never used and let lapse. He also obtained an emergency medical technician license from New Jersey. The plaintiff has a public insurance adjustor's license from Florida that allows him to work in New Jersey and Connecticut. Although the plaintiff had a home renovation license, he allowed it to lapse. The plaintiff's primary source of income over the years has been from real estate investment, building renovations, and construction. At the time of trial, the plaintiff worked as a driver for a local ambulance corps and was self-employed in construction and renovation of real property.
The defendant has been the primary caretaker of the parties' five children but has also engaged in various economic activities during the marriage, including assisting the plaintiff with his business. She has a background in the clothing business, including clothing design and sales. Her parents own a successful children's clothing company. The defendant testified at trial that she most recently worked part-time and had been offered a job paying $15 per hour.
The parties, with the assistance of family, purchased the marital residence and also acquired several investment properties, either together, in individual names, or with others.
On June 12, 2014, the parties placed a stipulation on the record resolving the issues of custody and parental access, pursuant to which the parties share joint legal custody of the four children then under the age of 18, with the defendant having primary physical custody and the plaintiff having parental access as set forth therein.
The issues of child support, maintenance, and equitable distribution were determined by the Supreme Court in an amended decision dated April 1, 2015, and the court signed a judgment of divorce entered December 30, 2015. In this decision, the court, after 12 days of trial, found neither party to be credible. The plaintiff appeals, and the defendant cross-appeals, from stated portions of the judgment of divorce.
Contrary to the defendant's contention, it was appropriate for the Supreme Court to impute income to the plaintiff in the amount of only $86,064 per year, as the record did not support imputing a greater income to the plaintiff. The court's imputation of income based on the plaintiff's self-reported expenses listed in his net worth statement, along with the parties' standard of living over the course of the marriage, was sufficient to form a basis for imputed income (see DeSouza-Brown v Brown, 71 AD3d 946, 947). The court providently exercised its discretion in imputing income to the defendant in the amount of $31,200 per year. The court may impute income to a party based on, among other things, her employment history, future earning capacity, and educational background (see Petkova v Radulovic, 163 AD3d 1014, 1014-1015). Here, the credible trial evidence established that the defendant had a high school diploma, was employed prior to trial in retail sales, and had been offered a job paying $15 per hour.
"The amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its unique facts" (Culen v Culen, 157 AD3d 926, 928; see D'Alauro v D'Alauro, 150 AD3d 675, 676; Gafycz v Gafycz, 148 AD3d 679, 679). In cases such as this one, commenced prior to January 23, 2016 (see L 2015, ch 269, § 4), factors to be considered are, among others, the standard of living of the parties, the income and property of the parties, the distribution of property, the duration of the marriage, the health of the parties, the present and future earning capacity of the parties, the ability of the party seeking [*4]maintenance to become self-supporting, the reduced or lost earning capacity of the party seeking maintenance, and the presence of children of the marriage in the respective homes of the parties (see Domestic Relations Law former § 236[B][6][a]; Gordon v Gordon, 113 AD3d 654, 654-655; Chaudry v Chaudry, 95 AD3d 1058, 1059). Here, considering the relevant factors, including the imputed incomes of the plaintiff and the defendant, awarding the defendant maintenance in the sum of $1,000 per month for a period of six years was a provident exercise of discretion (see Weidman v Weidman, 162 AD3d 720, 723). However, the Supreme Court should have included a provision that the award of maintenance of $1,000 per month for a period of six years was for that duration or until the death of either party or the defendant's remarriage, whichever shall occur sooner (see Domestic Relations Law § 236[B][1][a]; McLoughlin v McLoughlin, 63 AD3d 1017, 1018).
The plaintiff's contention that the annual amount of durational maintenance payments should have been deducted from his income in calculating his child support obligation is without merit (see Domestic Relations Law former § 240[1-b][b][5][vii][C]; Golden v Golden, 98 AD3d 647, 649; Kerrigan v Kerrigan, 71 AD3d 737, 738).
We agree with the Supreme Court's determination to direct the plaintiff to pay his pro rata share, 79%, of the camp expenses of the parties' children. However, the court should have qualified that these be reasonable camp expenses, required as and for child care in order for the defendant to be employed, and should have directed that the defendant pay her pro rata share, 21%, of the reasonable camp expenses of the parties' children (see Domestic Relations Law § 240[1-b][c][4]). We agree with the court's determination to direct the plaintiff to maintain health insurance for the children, and we find that the court should have directed the plaintiff to pay 79% of the cost of providing health insurance benefits for the children, and directed the defendant to pay 21% of the cost of providing health insurance benefits for the children, as well as 21% of the children's unreimbursed medical costs (see Domestic Relations Law § 240[1-b][c][5][ii], [v]).
Considering the best interests of the parties' children and the circumstances of the case, including that the parties raised their children in the Orthodox Jewish religion and the children attended private yeshivas, the Supreme Court providently exercised its discretion in directing the plaintiff to pay 79% of the private school tuition for the children (see Domestic Relations Law § 240[1-b][c][7]; Taylor v Taylor, 140 AD3d 944, 947; Manno v Manno, 196 AD2d 488, 491). However, we agree with the plaintiff that the court should have directed the defendant to pay her 21% pro rata share of the private school tuition for the children.
We agree with the defendant that the Supreme Court should have directed the plaintiff to purchase life insurance in the defendant's favor in an amount sufficient to secure the payment of the plaintiff's maintenance and child support obligations (see Domestic Relations Law § 236[B][8][a]; Hartog v Hartog, 85 NY2d 36, 50; Baron v Baron, 71 AD3d 807, 810; Comstock v Comstock, 1 AD3d 307, 308).
" Domestic Relations Law § 236 mandates that the equitable distribution of marital assets be based on the circumstances of the particular case and directs the courts to consider a number of statutory factors'" (Fairchild v Fairchild, 149 AD3d 810, 810-811, quoting Fields v Fields, 15 NY3d 158, 170; see Domestic Relations Law § 236[B][5][c], [d]). " A trial court considering the factors set forth in the Domestic Relations Law has broad discretion in deciding what is equitable under all of the circumstances'" (Fairchild v Fairchild, 149 AD3d at 811, quoting Mahoney-Buntzman v Buntzman, 12 NY3d 415, 420).
" In fashioning an award of equitable distribution, the Supreme Court is required to discuss the statutory factors it relied upon in distributing marital property'" (Spera v Spera, 71 AD3d 661, 662, quoting Milnes v Milnes, 50 AD3d 750, 750; see Payne v Payne, 4 AD3d 512, 513-514). "Nonetheless, [w]here it is evident that the Supreme Court considered all relevant factors and the reasons for its decision are articulated, the court is not required to specifically cite to and analyze each statutory factor" (Spera v Spera, 71 AD3d at 662 [internal quotation marks omitted]; see Milnes v Milnes, 50 AD3d at 750).
Contrary to the defendant's contention, it is evident that the Supreme Court considered and applied a number of the relevant statutory factors set forth in Domestic Relations

Law § 236(B)(5)(d) in making its equitable distribution determination (cf. Spera v Spera, 71 AD3d at 662). Moreover, it was not an improvident exercise of discretion for the court to direct that the marital assets be divided equally where, as here, the parties both contributed to this marriage of almost 21 years (see Spencer-Forrest v Forrest, 159 AD3d 762, 764; Steinberg v Steinberg, 59 AD3d 702, 703).
However, it was an improvident exercise of discretion for the Supreme Court to direct that the expenses of certain properties, referred to by the parties as the the Monsey, Hillburn, and Hyde Park investment properties, be shared 60% by the plaintiff and 40% by the defendant, "in proportion to their income ratio." It is the responsibility of both parties to maintain the investment properties and they are each receiving an equal share of the assets (see Judge v Judge, 48 AD3d 424, 425-426; Goddard v Goddard, 256 AD2d 545, 546). However, since the plaintiff controls the Monsey and Hyde Park properties, he shall be directed to pay 100% of the taxes, upkeep, and maintenance costs on these properties, and he shall receive a 50% credit from the proceeds of the sale of the Monsey and Hyde Park properties for the taxes and legitimate verified upkeep and maintenance costs paid by him. The defendant shall pay the taxes and legitimate verified upkeep and maintenance costs on the Hillburn property from the rental receipts. Any profit from the rental receipts shall be equally divided between the parties upon the sale of the Hillburn property.
We disagree with the Supreme Court's determination that all the outstanding debt was marital and that it should be shared by the parties in accordance with their respective incomes. Based on the record, except as otherwise set forth, the parties did not establish marital debt. Moreover, the court should not have directed that the parties pay debts that the court failed to specify.
In making a determination to award possession of the marital residence, " the need of the custodial parent to occupy the marital residence is weighed against the financial need of the parties'" (Mosso v Mosso, 84 AD3d 757, 760, quoting Goldblum v Goldblum, 301 AD2d 567, 568; see Sotnik v Zavilyansky, 101 AD3d 1102, 1103). Here, under the circumstances of this case, including that the defendant was awarded physical custody of the parties' children and that the plaintiff failed to establish an immediate need for his share of the proceeds of the sale of the marital residence, the Supreme Court providently exercised its discretion in awarding the defendant possession of the marital residence until the youngest child attains the age of 18 (see Sinanis v Sinanis, 114 AD3d 756, 757; Goldblum v Goldblum, 301 AD2d at 568). However, this should not preclude the parties from selling the marital residence sooner, upon the defendant's consent.
We agree with the defendant that she is entitled to receive a 50% credit against the proceeds of the sale of the marital residence for the payments she made to reduce the principal balance of the mortgage, as well as a 50% credit for payments she makes/made to reduce the principal balance of the home equity line of credit, from the time of the judgment of divorce to the time of the closing of the sale on the marital residence (see Morales v Carvajal, 153 AD3d 514, 514-515; Markopoulos v Markopoulos, 274 AD2d 457, 459). Where a party pays the other party's share of what proves to be marital debt, reimbursement is required (see Morales v Carvajal, 153 AD3d at 515).
We agree with the Supreme Court's determination to decline to distribute any alleged marital personal property, as there was insufficient evidence regarding any specific identification or

value of any such property (see e.g. Angot v Angot, 273 AD2d 423, 424). However, based on the testimony and other evidence, the court should have found that the plaintiff is entitled to the following items of separate personal property: (a) silver items: three menorahs, six kiddush cups and matching plates, a large tray, a large fruit basket, a flower vase, and two single candlestick holders; and (b) the plaintiff's collections of baseball cards and comic books as they existed at the time of the commencement of the action. The plaintiff is entitled to one-half of the family photographs, videos, and picture albums as they existed at the time of the commencement of the action.
We agree with the plaintiff that the Supreme Court should have awarded him a credit of $19,400 for his 50% share of marital funds that were withdrawn from the parties' joint checking account by the defendant. The defendant withdrew $20,000 on May 8, 2013, and an additional $18,800 on July 12, 2013, one week prior to the commencement of this action, and failed to [*5]substantiate that these funds were used for marital expenses. These were marital funds subject to equitable distribution (see Iacono v Iacono, 145 AD3d 972, 974; Renck v Renck, 131 AD3d 1146, 1149; DeGroat v DeGroat, 84 AD3d 1012).
The plaintiff argues on appeal that the judgment of divorce should have included a provision holding the defendant in contempt for violating the parental access provisions of a purported pendente lite order, and should have awarded the plaintiff a credit against maintenance and child support arrears for (a) payments made by the plaintiff pursuant to the purported pendente lite order and (b) payments made voluntarily by the plaintiff during the pendency of the action. The defendant argues on her cross appeal that the judgment of divorce should have awarded her (1) arrears under the purported pendente lite order award and (2) a credit for marital funds allegedly used by the plaintiff to pay pendente lite obligations. "It is the obligation of the appellant to assemble a proper record on appeal that contains all of the relevant papers; appeals that are not based upon complete and proper records must be dismissed" (Bousson v Bousson, 136 AD3d 954, 954; see Deutsche Bank Natl. Trust Co. v Hounnou, 147 AD3d 814, 814). We are unable to review the foregoing issues and render an informed decision on the merits based on the joint record submitted by the parties. The joint record does not contain the purported pendente lite order, or any of the motions pursuant to which the parties are seeking a finding of contempt or credit for payments made during the pendency of the action (see Bousson v Bousson, 136 AD3d at 954; Deutsche Bank Natl. Trust Co. v Hounnou, 147 AD3d at 814). Thus, we dismiss the appeal and cross appeal from so much of the judgment of divorce as relates to these issues.
The parties' remaining contentions are without merit.
SCHEINKMAN, P.J., BALKIN, CONNOLLY and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court